Clara J. Shin (Bar No. 214809)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
E-mail: cshin@cov.com

John E. Hall (Bar No. 118877)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
E-mail: jhall@cov.com

Kurt G. Calia (Bar No. 214300)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4717
E-mail: kcalia@cov.com
E-mail: kcahoy@cov.com

*Counsel for Defendant*
*Hewlett Packard Enterprise Co.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEGAFON PJSC, a Russian corporation, | Civil Case No.: 5:18-cv-06463-NC |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 9(b), 12(b)(6), AND 12(b)(7)** |
| v. | |
| HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation, | Date:     Wednesday, February 27, 2019 |
| Defendant. | Time:     1:00 p.m. |
| | Location: Courtroom 5 |
| | Judge:    Hon. Nathanael A. Cousins |

# TABLE OF CONTENTS

Page

INTRODUCTION AND STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF FACTS ............................................................................................................2

    A.    The Framework Contract ..................................................................................2

    B.    MegaFon's Complaint .......................................................................................4

ARGUMENT ................................................................................................................................5

I.    LEGAL STANDARD .........................................................................................................5

II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE HPE RUSSIA IS A NECESSARY AND INDISPENSABLE PARTY THAT CANNOT BE JOINED. ..........6

    A.    HPE Russia Is a Necessary Party Under Rule 19(a)........................................6

    B.    It Is Not Feasible To Join HPE Russia As a Party...........................................11

    C.    HPE Russia Is an Indispensable Party Under Rule 19(b). ...............................12

III.    MEGAFON HAS NOT PLED ANY ACTIONABLE CLAIM AGAINST HPE. ...........16

    A.    The Alleged Pre-Contract Statements Do Not Support MegaFon's Claims.........16

        1.    Most of the alleged pre-contract statements are non-actionable puffery..16

        2.    The remaining statements that pre-date the Framework Contract do not satisfy Rule 9(b)'s heightened pleading standard. ...................................19

        3.    MegaFon could not justifiably rely on any of the pre-contract statements in light of the Framework Contract's integration clause.........21

        4.    MegaFon cannot base its claims on any statements incorporated into the Framework Contract itself. ...............................................................21

        5.    Plaintiffs have not adequately pled a fraudulent omission theory. ...........22

    B.    The Post-Contract Statements Could Not Have Induced Justifiable Reliance......................................................................................................23

    C.    MegaFon's Claims Are Time Barred...............................................................24

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Los Angeles County*,
　751 F.2d 1089 (9th Cir. 1985) ................................................................................................10

*Aiello v. BAC Home Loans Servicing, LP*,
　2011 WL 13266352 (N.D. Cal. Sept. 30, 2011) ......................................................................24

*Albers v. PMP Access Fund Mgr. LLC*,
　2010 WL 2486369 (N.D. Cal. June 16, 2010) ........................................................................12

*Am. Greyhound Racing, Inc. v. Hull*,
　305 F.3d 1015 (9th Cir. 2002) ............................................................................................9, 13

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ..................................................................................................................5

*Bly-Magee v. California*,
　236 F.3d 1014 (9th Cir. 2001) ............................................................................................6, 20

*BouMatic, LLC v. Idento Operations, BV*,
　759 F.3d 790 (7th Cir. 2014) ..................................................................................................12

*Brothers v. Hewlett-Packard Co.*,
　2006 WL 3093685 (N.D. Cal. Oct. 31, 2006) ........................................................................18

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
　637 F.3d 1047 (9th Cir. 2011) ..................................................................................................6

*In re Calpine Corp. Sec. Litig.*,
　288 F. Supp. 2d 1054 (N.D. Cal. 2003) ....................................................................................2

*Carl Schroeter Gmbh & KO., KG. v. Crawford & Co.*,
　2009 WL 1408100 (E.D. Pa. May 19, 2009) ....................................................................13, 15

*Caterpillar Inc. v. Lewis*,
　519 U.S. 61 (1996) ..................................................................................................................11

*Cervantes v. Aurora Loan Servs. LLC*,
　2011 WL 13101273 (S.D. Cal. Aug. 10, 2011) ........................................................................7

*Compton v. Midland Mortgage*,
　2016 WL 7479418 (C.D. Cal. Apr. 19, 2016) ........................................................................22

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
　911 F.2d 242 (9th Cir. 1990) ..................................................................................................17

ii

*Cty. of Marin v. Deloitte Consulting LLP*,
   836 F. Supp. 2d 1030 (N.D. Cal. 2011) ..................................................16, 17, 18, 19

*Dawavendewa v. Salt River Project, Agric. Improvement & Power Dist.*,
   276 F.3d 1150 (9th Cir. 2002) ..............................................................................12, 13

*Deschutes River Alliance v. Portland Gen. Elec. Co.*,
   323 F. Supp. 3d 1171 (D. Or. June 11, 2018) ..............................................................9

*E.E.O.C. v. Peabody W. Coal Co.*,
   400 F.3d 774 (9th Cir. 2005) .......................................................................6, 11, 12

*Eidson v. Medtronic, Inc.*,
   981 F. Supp. 2d 868 (N.D. Cal. 2013) ......................................................................24

*Elias v. Hewlett-Packard Co.*,
   950 F. Supp. 2d 1123 (N.D. Cal. 2013) ...............................................................18, 20

*Encatto Ltd. v. Obscura Digital Inc.*,
   2013 WL 394195 (N.D. Cal. Jan. 30, 2013) ..................................................................8

*Faysound Ltd. v. United Coconut Chems., Inc.*,
   878 F.2d 290 (9th Cir. 1989) ....................................................................................11

*Fiscus v. Combus Fin. AG*,
   2007 WL 4164388 (D.N.J. Nov. 20, 2007) ..................................................... *passim*

*Flores v. GreenPoint Mortg. Funding, Inc.*,
   2017 WL 1315577 (N.D. Cal. Apr. 7, 2017) ...............................................................22

*Flowers v. Wells Fargo Bank, N.A.*,
   2011 WL 2748650 (N.D. Cal. July 13, 2011) ..............................................................19

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*,
   868 F. Supp. 2d 983 (E.D. Cal. 2012) ........................................................................21

*Gen-Probe, Inc. v. Amoco Corp.*,
   926 F. Supp. 948 (S.D. Cal. 1996) ............................................................................20

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
   352 F.3d 367 (9th Cir. 2003) ..............................................................................17, 18

*Hammons v. Wells Fargo Bank, N.A.*,
   2015 WL 9258092 (N.D. Cal. Dec. 18, 2015) ..............................................................11

*Intelligraphics, Inc. v. Marvell Semiconductor, Inc.*,
   2009 WL 330259 (N.D. Cal. Feb. 10, 2009) ...............................................................19

*In re Intrexon Corp. Sec. Litig.*,
   2017 WL 732952 (N.D. Cal. Feb. 24, 2017) ...............................................................17

*It's Just Lunch Int'l LLC v. Island Park Enter. Grp., Inc.*,
  2009 WL 10673157 (C.D. Cal. Sept. 3, 2009) ...................................................21

*Jaffer v. Standard Chartered Bank*,
  301 F.R.D. 256 (N.D. Tex. 2014) ...............................................................9, 15

*Jamul Action Comm. v. Chauduri*,
  200 F. Supp. 3d 1042 (E.D. Cal. 2016)............................................................8

*Jewelers Mut. Ins. Co. v. ADT Sec. Servs., Inc.*,
  2009 WL 2031782 (N.D. Cal. July 9, 2009)...................................................23

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
  880 F. Supp. 2d 1029 (N.D. Cal. 2012) .........................................................21

*Jolly v. Eli Lilly & Co.*,
  44 Cal. 3d 1103 (1988) ..................................................................................25

*Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*,
  201 F.R.D. 337 (D. Del. 2001) ......................................................................15

*Lazy Y Ranch Ltd. v. Behrens*,
  546 F.3d 580 (9th Cir. 2008) .........................................................................23

*Missouri River Historical Dev., Inc. v. Penn Nat'l Gaming, Inc.*,
  283 F.R.D. 501 (N.D. Iowa 2012) ...................................................................8

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*,
  210 F.3d 246 (4th Cir. 2000) ...........................................................................8

*Navigators Ins. Co. v. Dialogic*,
  2014 WL 2196403 (N.D. Cal. May 27, 2014) ..................................................8

*Newcal Indus., Inc. v. Ikon Office Sol.*,
  513 F.3d 1038 (9th Cir. 2008) .......................................................................16

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) .......................................................17, 18

*Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*,
  2008 WL 1925248 (S.D. Cal. Apr. 29, 2008) .................................................21

*Orlando v. Carolina Cas. Ins. Co.*,
  2007 WL 781598 (E.D. Cal. Mar. 13, 2007) ..................................................20

*Parent v. Millercoors LLC*,
  2016 WL 3348818 (S.D. Cal. June 16, 2016)..................................................22

*Polanco v. H.B. Fuller Co.*,
  941 F. Supp. 1512 (D. Minn. 1996)................................................................10

iv

*Potter v. Chevron Prods. Co.*,
  2018 WL 4053448 (N.D. Cal. Aug. 24, 2018) ...................................................................2, 5

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*,
  204 F.3d 867 (9th Cir. 2000) ......................................................................................11

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008).....................................................................................................14

*Rhynes v. Stryker Corp.*,
  2011 WL 2149095 (N.D. Cal. May 31, 2011) ..............................................................24

*Rosal v. First Fed. Bank of Cal.*,
  671 F. Supp. 2d 1111 (N.D. Cal. 2009) .................................................................1, 24

*Satarco Kish Trading, LLC v. Wamar Int'l Grp., LLC*,
  2016 WL 5937792 (C.D. Cal. Jan. 6, 2016) .................................................................12

*Shermoen v. United States*,
  982 F.2d 1312 (9th Cir. 1992) ........................................................................................5

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .........................................................................................5

*Super Chefs, Inc. v. Second Bite Foods, Inc.*,
  2015 WL 12914330 (C.D. Cal. June 15, 2015) .......................................................1, 21

*SuperShuttle Int'l, Inc. v. Aysov*,
  2015 WL 4511300 (N.D. Cal. July 23, 2015) ................................................................9

*Thimbler, Inc. v. Unique Solutions Design, USA. Ltd.*,
  2014 WL 1663418 (E.D.N.C. Apr. 25, 2014)................................................................8

*Timberlake v. Synthes Spine, Inc.*,
  2011 WL 2607044 (S.D. Tex. June 30, 2011) ..............................................................15

*In re Toyota Motor Corp.*,
  785 F. Supp. 2d 883 (C.D. Cal. 2011) ...........................................................7, 9, 10, 14

*U.S. Motors v. Gen. Motors Europe*,
  551 F.3d 420 (6th Cir. 2008) .......................................................................................12

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
  660 F. Supp. 2d 1163 (C.D. Cal. 2009) .......................................................................20

*United States v. Safran Grp.*,
  2017 WL 235197 (N.D. Cal. Jan. 19, 2017)................................................................22

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .....................................................................................20

*Villegas v. Wells Fargo Bank, N.A.*,
    2012 WL 4097747 (N.D. Cal. Sept. 17, 2012) ........................................................24

*Walsh v. Centeio*,
    692 F.2d 1239 (9th Cir. 1982) ........................................................................13, 14

*Woods v. Google Inc.*,
    2011 WL 3501403 (N.D. Cal. Aug. 10, 2011) ........................................................21

*World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*,
    66 F. Supp. 3d 1233 (N.D. Cal. 2014) ..................................................................23

*Yadav-Ranjan v. Rushmore Loan Mgmt. Servs., LLC*,
    2018 WL 3328499 (N.D. Cal. July 6, 2018)............................................................23

*Yamauchi v. Cotterman*,
    84 F. Supp. 3d 993 (N.D. Cal. 2015) ....................................................................25

*Zurich Am. Ins. Co. v. Elecs. for Imaging, Inc.*,
    2009 WL 2252098 (N.D. Cal. July 28, 2009)..........................................................8

**Statutes**

28 U.S.C. § 1332 ........................................................................................11, 12

Cal. Bus. & Prof. Code § 17204 ................................................................................7

Cal. Bus. & Prof. Code § 17208 ..............................................................................24

Cal. Civ. Proc. Code § 338 ......................................................................................24

**Other Authorities**

Fed. R. Civ. P. 9 ................................................................................... *passim*

Fed. R. Civ. P. 12 ................................................................................. *passim*

Fed. R. Civ. P. 19 ................................................................................. *passim*

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Wednesday, February 27, 2019, at 1:00 p.m., or as soon thereafter as counsel may be heard before the Honorable Nathanael M. Cousins in Courtroom 5 of the United States District Court, Northern District of California, San Jose Division, 280 South First Street, San Jose, California, Defendant Hewlett Packard Enterprise Co. ("HPE") will move this Court to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), and 12(b)(7).

This Motion will seek an order dismissing all of plaintiff's claims with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION AND STATEMENT OF THE ISSUES

Plaintiff MegaFon PJSC ("MegaFon"), a Russian telecom operator, seeks to transform a straightforward commercial dispute arising from a contract performed in Russia by a Russian company into a California tort action against defendant Hewlett Packard Enterprise Co. ("HPE"). In April 2013, MegaFon contracted with ZAO Hewlett-Packard A.O. ("ZAO HP"), the predecessor of HPE's Russian subsidiary ("HPE Russia"), to enable high-speed wireless communication over MegaFon's mobile phone network in Russia. Written in Russian and governed by Russian law, the contract included detailed technical specifications and precise performance schedules. MegaFon now claims that it never received the benefit of its bargain. MegaFon is entitled to pursue claims against HPE Russia under the contracted-for dispute-resolution procedure: litigation in Russia applying Russian law. What MegaFon may not do is pursue a contract dispute in the guise of tort claims against HPE in a U.S. forum that excludes HPE Russia.

MegaFon's claims should be dismissed for the following reasons:

*First*, in a dispute that necessarily must adjudicate whether HPE Russia's performance met the contracted-for technical requirements, HPE Russia is a necessary party. Because HPE Russia cannot feasibly be joined and because it would be improper to proceed in its absence, the action must be dismissed.

*Second*, all of the alleged pre-contract statements on which MegaFon bases its claims are insufficient to plead actionable misrepresentations for multiple reasons. Most of the statements constitute non-actionable puffery; the remainder do not satisfy Rule 9(b). In addition, the integration clause in the

contract negates the element of justifiable reliance for all of the statements.  MegaFon also attempts to plead fraud based on statements incorporated into the contract itself, a theory that is barred by the economic loss doctrine and by the fact that HPE Russia—*not* HPE—signed the contract.  Finally, to the extent MegaFon seeks to rely on a theory of fraudulent omission, that theory fails because MegaFon has not pled facts supporting a duty to disclose, and its allegations of justifiable reliance are implausible on their face.

*Third*, MegaFon identifies several statements allegedly made after the contract was signed, but these could not have fraudulently induced a contract that pre-dated them.

*Finally*, each of MegaFon's claims is time barred on its face.

## STATEMENT OF FACTS[1]

### A.    The Framework Contract

On April 16, 2013, MegaFon, a "nationwide mobile phone operator in the Russian Federation" that is headquartered in Moscow and is "amongst the largest telecom operators in Russia," entered into a contract (the "Framework Contract") with HPE Russia, a "legal entity incorporated in accordance with the laws of the Russian Federation."  Declaration of Kurt Calia in Support of Motion To Dismiss ("Calia Decl."), Ex. A,[2] Framework Contract p. 1; Compl. ¶¶ 1, 7, 53.[3]  The contract provided that HPE Russia would "rebuild key elements of MegaFon's wireless [cellular] network in Russia."  Compl. ¶ 3.  MegaFon

---

[1] This factual overview is based on the allegations in the Complaint, which are assumed to be true solely for purposes of this Motion, as well as documents referenced therein and evidence that may be considered for the necessary party analysis.  *See Potter v. Chevron Prods. Co.*, 2018 WL 4053448, at *4 (N.D. Cal. Aug. 24, 2018) (noting that "court may consider evidence outside of the pleadings" when resolving a motion under Rule 12(b)(7)); *In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1075 (N.D. Cal. 2003) ("In adjudicating a motion to dismiss under Rule 12(b)(6), the Court may properly take judicial notice of documents referenced in a complaint without converting the motion into one for summary judgment where the authenticity of the documents [is] not in dispute.").

[2] All subsequent references to "Ex." refer to the Calia Declaration unless otherwise specified.

[3] MegaFon originally contracted with ZAO HP.  In a 2015 corporate restructuring, ZAO HP spun off its entire enterprise business, including the Framework Contract, into a new entity: Limited Liability Company Hewlett Packard Enterprise. Declaration of Alexander Scherbina in Support of Defendant's Motion To Dismiss ("Scherbina Decl.") ¶¶ 6–9.  For simplicity, this Motion uses "HPE Russia" to refer to both ZAO HP and its successor in the Framework Contract, unless otherwise noted.

and HPE Russia drafted the Framework Contract in the "Russian language"[4] and agreed that the Contract would be interpreted under the "law of [the] Russian Federation." Ex. A, Framework Contract §§ 14.2, 17.8.[5]

Under the Framework Contract, HPE Russia agreed to provide a User Data Repository ("UDR") system composed of hardware and software that, when "integrated into the [MegaFon] Network," would meet specific "[t]echnical characteristics." Compl. ¶ 55. Among other things, in hundreds of pages of exhibits attached to the Framework Contract and made "essential parts" thereof,[6] HPE Russia (1) agreed to provide a UDR system with precisely defined components and technical specifications;[7] (2) promised to deliver, install, configure, and integrate the system at each of six Russian sites according to a detailed, phased schedule (subject to ███████████████████████████████████ ███████████████████);[8] and (3) warranted that HPE Russia would provide ████████████ █████████████████████████████████████████████████████████.[9] HPE Russia's performance under the Framework Contract ████████████████████████████████████████ ██████████████████████████████████████████████.[10]

---

[4] Although the Framework Contract includes an English translation, the Russian-language version governs the parties' rights and obligations. *See* Ex. A, Framework Contract § 17.8. For purposes of this Motion, HPE references the Framework Contract's English translation and provides certified translations of certain incorporated exhibits that were written exclusively in Russian.

[5] *See also id.* § 2.9 (defining "site" as "any location in the territory of [the] Russian Federation" where equipment is installed); *id.* § 2.12 (defining "network" as MegaFon's network "in the Russian Federation"); *id.* § 2.20 (defining "working day" as "the standard . . . working day in the Russian Federation"); *id.* § 10.12 (requiring tax invoices in accordance with "valid legislation in [the] Russian Federation"); *id.* § 11.9 (requiring documentation mandated by the "law of [the] Russian Federation, including, in applicable cases, certificates issued by Ministry of Telecom and Mass Communications of the Russian Federation"); *id.* § 11.14 (requiring authorizations where "required by law of [the] Russian Federation"); *id.* § 11.18 (requiring conformity with Russian intellectual property laws).

[6] Ex. A, Framework Contract § 17.7.

[7] Ex. B, Technical Solution document (Exhibit 16 to Framework Contract); Ex. C, Technical Specifications of UDR System (Exhibit 11 to Framework Contract).

[8] Ex. D, Project Plan document (Exhibit 17 to Framework Contract); Ex. A, Framework Contract §§ 12.2, 12.3.1, 12.6–12.7.

[9] Ex. E, Warranty and Support Terms (Exhibit 8 to Framework Contract).

[10] Ex. A, Framework Contract §§ 10.4–10.17.

1    In the years after they signed the Framework Contract, MegaFon and HPE Russia executed a series

2    of amendments.  Compl. ¶ 65.  In amendment after amendment, MegaFon ███████████████

3    ███████████████████████████████████████████████████████████████████████

4    █████████████████.  Ex. F, Addendum No. 11, ¶ 6; *see also* Ex. G, Addendum No. 3,

5    ¶ 5; Ex. H, Addendum No. 5, ¶ 10.  Nonetheless, MegaFon now claims that within months of executing

6    the Framework Contract, the UDR system was plagued by "poor performance . . . and extremely low

7    productivity of provisioning," and that by February 2014, HPE Russia had "fail[ed] to provide the

8    contracted-for performance."  Compl. ¶¶ 62-63.  This alleged failure prompted MegaFon in October 2014

9    to "inform[] HPE that it would no longer accept delivery of UDR phases until the critical issues plaguing

10   the UDR deployment were solved."  Compl. ¶¶ 62–64.  MegaFon asserts that the problems with the UDR

11   system were never remedied, resulting in several "near shutdowns" of its network.  *Id.* ¶ 5.

12   **B.    MegaFon's Complaint**

13   Repeated throughout MegaFon's Complaint is the allegation that HPE Russia's UDR system failed

14   to "meet the contracted-for technical requirements."  Compl. ¶ 95; *see also id.* ¶ 65 (alleging "the

15   continued inability of [the] new UDR system to meet the contracted-for technical requirements"); *id.* ¶ 67

16   ("UDR system was fundamentally incapable of meeting . . . key contractual requirements"); *id.* ¶ 97

17   ("fundamentally faulty UDR system" not "in[] compliance with the contracted-for technical

18   requirements"); *id.* ¶ 106 (UDR system could never be brought "into compliance with the contracted-for

19   technical requirements"); *id.* ¶ 113 (alleging "continued failure . . . to meet MegaFon's contracted-for

20   technical requirements").  MegaFon also claims damages from the UDR system's "fail[ure] to provide the

21   fundamental purpose of the contract" and MegaFon's alleged need to "repair, replace, and/or re-architect

22   its UDR system so that it can obtain the contracted-for functionality."  *Id.* ¶ 87(a), (b), (d).

23   The Framework Contract addresses how MegaFon's claims are to be resolved.  The parties must

24   attempt to resolve all disputes relating to the Contract "by negotiation[]" and, if that fails, through litigation

25   in the Moscow City Arbitration Court applying the "laws of [the] Russian Federation."  Ex. A, Framework

26   Contract §§ 14.1, 12.1.  ████████████████████████████████████████████

27   ███████████████████████████████████████████████████████████████████████

28

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *Id.* §§ 12.11, 12.11.1.

MegaFon now seeks to circumvent these provisions by bringing suit in the United States, naming only HPE Russia's U.S. parent company as a defendant, and dressing up its breach-of-contract claims as fraud claims under California law.  MegaFon alleges that it awarded a $28 million contract to rebuild "key elements" of its business to HPE Russia based not on the detailed architecture of the UDR system or the hundreds of pages of carefully negotiated specifications, but instead on general assertions during the bidding process that HPE had "experience," "technical expertise," "capabilities," and "resources"; that HPE would "stand behind the UDR system"; and that the system was "proven and tested" and "reliable and fault-tolerant."  Compl. ¶¶ 5, 17, 19, 27, 40, 104.  MegaFon claims to have relied on these alleged misrepresentations, notwithstanding a clause in the Framework Contract providing that "[a]ll preliminary negotiations and correspondence . . . lose force" upon the Contract's execution.  Ex. A, Framework Contract § 17.2.  In pleading claims for fraudulent inducement, negligent misrepresentation, and unfair competition, MegaFon seeks damages far beyond any amounts allowed under the Framework Contract, including treble punitive damages.  Compl. pp. 22–23.

### ARGUMENT

### I.   LEGAL STANDARD

Rule 12(b)(7) provides for dismissal of a complaint if an absent party needed for just adjudication of the claim under Rule 19 cannot be joined.  A court must assess (1) whether a party is "necessary" (*i.e.*, whether "complete relief" can be accorded among the existing parties without it, or whether the absent party has a protected interest in the suit); (2) whether it is feasible to join the absent party; and (3) if not, whether that party is indispensable such that in "equity and good conscience," dismissal is necessary.  Fed. R. Civ. P. 19(a)–(b); *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992).  In resolving a motion under Rule 12(b)(7), "the court may consider evidence outside of the pleadings."  *Potter*, 2018 WL 4053448, at *4.

A complaint must contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When evaluating a motion under Rule 12(b)(6), a court need not credit "unwarranted deductions of fact," "unreasonable inferences,"

or allegations that are "merely conclusory" or that "contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

For claims sounding in fraud, Rule 9(b) further requires a plaintiff to "state with particularity the circumstances constituting fraud." Fraud pleadings must identify "'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Rule 9(b) "serves not only to give notice to defendants . . . , but also 'to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE HPE RUSSIA IS A NECESSARY AND INDISPENSABLE PARTY THAT CANNOT BE JOINED.

MegaFon alleges that it was injured by HPE's purported fraud because it was induced to enter into an agreement (the Framework Contract), which HPE Russia could not, and did not, perform. But this theory of injury puts squarely at issue HPE Russia's rights, obligations, and performance under that contract. Adjudicating those issues without HPE Russia, the primary actor that negotiated and performed the Framework Contract, would (i) severely impair HPE Russia's interests, and (ii) deprive HPE Russia of its right to have disputes regarding the Framework Contract litigated in Russia.

This makes HPE Russia a required party under Rule 19(a). It is not feasible to join HPE Russia, however, because joinder would destroy subject matter jurisdiction. Because it is improper under the factors set forth in Rule 19(b) to proceed in HPE Russia's absence, the Court should dismiss MegaFon's Complaint. *See* Fed. R. Civ. P. 12(b)(7) (allowing dismissal for "failure to join a party under Rule 19"); *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 778–80 (9th Cir. 2005) (describing the "three successive inquiries" a court undertakes when dismissing a case under Rule 19).

### A. HPE Russia Is a Necessary Party Under Rule 19(a).

Rule 19 provides that an entity is a "required" or "necessary" party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so

6

1

2

> situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If a foreign subsidiary's "presence is critical to the disposition of important issues in the case, and/or its evidence will either support the complaint or bolster the defense, it is a necessary party." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 904 (C.D. Cal. 2011).

HPE Russia has "an interest relating to the subject of the action" because litigating MegaFon's three claims will require deciding whether MegaFon received its contracted-for performance from HPE Russia. For any of its claims against HPE to prevail, MegaFon must prove that it suffered damages as a result of HPE's alleged misrepresentations.[11] But it cannot do so without first proving HPE Russia breached the Framework Contract. That is because if HPE Russia performed as required by the contract, then MegaFon received the benefit of its bargain, and HPE's alleged "fraudulent inducement" caused MegaFon no damage. Indeed, the Complaint makes clear that MegaFon seeks to recover damages for injuries allegedly caused by HPE Russia's breach of the Framework Contract: It seeks $28 million (the amount paid under the contract) for the "inability of [HPE Russia's] UDR system to provide the *contracted-for* functionality" because the system allegedly "has never met numerous requirements and . . . fails to provide the fundamental purpose of the *contract*." Compl. ¶ 87(a), (d) (emphases added). Establishing HPE Russia's non-performance is thus a necessary factual predicate to each of MegaFon's claims.[12]

"When a court is called upon to interpret the terms of a contract and to evaluate whether the parties to the contract have breached those terms or upheld their respective responsibilities, the absence of one or more of the parties exposes the absent party to precisely the kind of risks that Rule 19(a)[(1)] empowers courts to guard against." *Fiscus v. Combus Fin. AG*, 2007 WL 4164388, at *5 (D.N.J. Nov. 20, 2007). For that reason, courts repeatedly have found that a contracting party is a necessary party to an action in

---

[11] *See Cervantes v. Aurora Loan Servs. LLC*, 2011 WL 13101273, at *2 (S.D. Cal. Aug. 10, 2011) ("resulting damage" is an element of both fraud and negligent misrepresentation); Cal. Bus. & Prof. Code § 17204 (requiring private UCL plaintiffs to have "suffered injury in fact and ha[ve] lost money or property as a result of such unfair competition").

[12] HPE Russia's performance under the Framework Contract is relevant to other key issues as well, including whether any fraud or misrepresentation occurred.

7

which its rights or liabilities under that contract must be resolved.  *See, e.g.*, *id.* at *5–6 (holding that foreign signatories of contract were necessary parties to fraud action because whether they breached the contract was "a necessary factual predicate to all of Plaintiff's remaining claims"); *see also Jamul Action Comm. v. Chauduri*, 200 F. Supp. 3d 1042, 1049 (E.D. Cal. 2016) (finding Tribe to be necessary party when action involved claim that "gaming on the Tribe's land would violate its tribal-state compact"); *Navigators Ins. Co. v. Dialogic*, 2014 WL 2196403, at *2 (N.D. Cal. May 27, 2014) (insurer was necessary party because court would have to interpret contractual provision on which its liability would depend); *Encatto Ltd. v. Obscura Digital Inc.*, 2013 WL 394195, at *3–4 (N.D. Cal. Jan. 30, 2013) (finding parent corporation to be a necessary party because the case turned on analysis of a third party's performance on an agreement with the parent corporation).[13]

Beyond its interest in the contractual questions at issue here, HPE Russia also has a specific interest in having those questions decided in Russia by a Russian tribunal.  MegaFon and HPE Russia agreed that if negotiations break down, "*[a]ll* dispute[s] [that] appear because of this Contract . . . . must be tried in Moscow City Arbitration Court."  Ex. A, Framework Contract § 14.1 (emphasis added).  That contractual provision is important to HPE Russia: Both parties to the contract are located there, as are key witnesses and evidence necessary to defend against MegaFon's claims that HPE Russia failed to meet its contractual

---

[13] *See also, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 251 (4th Cir. 2000) (absent corporate parent was necessary and indispensable because resolving this insurance coverage action would require the court "to interpret the notice provisions of the policy and other agreements between [the plaintiff] and [the absent parent]," and "[a]s the contracting party and the party charged with receiving and giving notice of claims under the policy . . . [the parent] has a direct interest in the district court's determination of its reporting obligations"); *Thimbler, Inc. v. Unique Solutions Design, USA. Ltd.*, 2014 WL 1663418, at *3–5 (E.D.N.C. Apr. 25, 2014) (Canadian entity was necessary party because "the resolution of [plaintiff's] claim against [the U.S. affiliate] in this case will reasonably require the court to determine the validity of the alleged contract, and if valid, the rights and obligations of [plaintiff] and [the absent entity] under that contract" and the "gravamen of [the plaintiff's] amended complaint implicates [the absent entity's] conduct in procuring and disseminating the scanners manufactured by [plaintiff]"); *Missouri River Historical Dev., Inc. v. Penn Nat'l Gaming, Inc.*, 283 F.R.D. 501, 507–08 (N.D. Iowa 2012) (finding the absent party who had contracted with the plaintiff was a necessary party because "this case requires the court to interpret [that] Agreement to determine what rights the parties have under the Agreement before it can decide whether [the defendant] committed any tort"); *Zurich Am. Ins. Co. v. Elecs. for Imaging, Inc.*, 2009 WL 2252098, at *4 (N.D. Cal. July 28, 2009) (finding parties to be necessary "[g]iven the complete redundancy of factual and legal issues in both federal and state proceedings").

obligations.  *See* Declaration of Oleg Neyolov in Support of Defendant's Motion To Dismiss ("Neyolov Decl.") ¶¶ 6–22.[14]  Allowing this case to proceed in the United States thus would necessarily impair HPE Russia's contractual right to have disputes regarding the contract heard in Russia where the parties and evidence are located.  *Id.* ¶ 22.  Such impairment of HPE Russia's interests makes it a necessary party. *See Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023 (9th Cir. 2002) (finding party to a contract to be a necessary party when adverse interpretation would "render[] the compacts less valuable" to the contracting party); *SuperShuttle Int'l, Inc. v. Aysov*, 2015 WL 4511300, at *2 (N.D. Cal. July 23, 2015) (finding that an absent party had a protectable legal interest in the determination of which forum heard a dispute between its employees and its franchise agreement counterparty); *Jamul Action Comm.*, 200 F. Supp. 3d at 1049 (finding practical impairment of necessary party's interests when any participation in the action from which it was absent would deprive it of the benefit of sovereign immunity).

MegaFon cannot circumvent this forum selection provision by suing HPE Russia's parent corporation instead of suing HPE Russia directly.  "[S]ubsidiaries that are the primary participants in the events giving rise to litigation are considered necessary parties that are required to be joined in that litigation."  *Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256, 260–61 (N.D. Tex. 2014); *see also Toyota*, 785 F. Supp. 2d at 906 ("Whether the foreign entities are necessary depends on whether they were active participants in the alleged wrongful conduct, or whether the conduct complained of was solely that of the parent company.").  Likewise, courts will consider a non-party to be necessary when the defendant is "not capable of making all of the arguments that the [non-party] would make," including because the non-party has unique evidence.  *Deschutes River Alliance v. Portland Gen. Elec. Co.*, 323 F. Supp. 3d 1171, 1179–80 (D. Or. June 11, 2018) (finding party to be necessary when it would "offer necessary elements for the Court's consideration, such as how to interpret" certification at issue).

That is unquestionably true for HPE Russia, given its central involvement in the subject matter alleged in MegaFon's Complaint.[15]  HPE Russia (via its predecessor ZAO HP) had been doing business

---

[14] Execution of these declarations does not constitute consent by HPE Russia to jurisdiction in this forum.

[15] MegaFon's allegations blur repeatedly the line between distinct companies, attributing actions to a generalized "HPE."  *See, e.g.*, Compl. ¶ 65 (attempting to attribute to HPE an alleged "misrepresentation"

with MegaFon for years before the Framework Contract, received the initial outreach from MegaFon, and led the negotiations.  *See* Scherbina Decl. ¶¶ 11–13; Neyolov Decl. ¶¶ 6–8, 21.  HPE Russia then signed the Framework Contract and began performance by purchasing the hardware for the UDR system from a Russian supplier and employing engineers and technical staff to build and service the network.  Neyolov Decl. ¶¶ 9–13.  In 2013, when MegaFon requested assurances relating to the deployment of the UDR system, *see* Compl. ¶ 62, it directed its demands to HPE Russia, and HPE Russia employees worked to resolve them.  Neyolov Decl. ¶ 14.  When MegaFon refused to accept certain phases of the system while deployment issues remained open in 2014, *see* Compl. ¶ 64, HPE Russia employees again fielded those concerns and worked to resolve them.  Neyolov Decl. ¶ 15.  And it was HPE Russia that negotiated a series of amendments starting in 2015 designed to resolve MegaFon's concerns.  *Id.* ¶ 16, 23; Compl. ¶ 65 ("Hewlett Packard Enterprise, LLC (of Russia) agreed to provide additional hardware and 'guarantee[d] that the additional HW in question is sufficient to avoid issues [] related to lack of memory in the operation of UDR and the synchronization of data between UDR nodes.'").  Finally, it is HPE Russia that continues to provide support and maintenance of the UDR system under annual agreements with MegaFon.  Neyolov Decl. ¶¶ 17, 23.  HPE Russia was and is integrally involved in the events underlying MegaFon's Complaint, and evidence in its possession would be necessary to resolve the key issues in dispute.

In essence, MegaFon's suit puts HPE Russia in a quandary.  Either it makes critical witnesses and evidence available to HPE for the U.S. proceeding, thereby losing the benefits of its contracted-for forum selection clause, or it risks an adverse judgment against HPE that could bind and/or be recovered against HPE Russia in the future.  Both choices "may . . . as a practical matter impair" HPE Russia's interests, so HPE Russia is a necessary party.  Fed. R. Civ. P. 19(a)(1)(B); *see also Aguilar v. Los Angeles County*, 751 F.2d 1089, 1093 (9th Cir. 1985) (finding non-party to be necessary when the "underlying issue . . . is identical in both suits" and resolution could be binding on the non-party); *Toyota*, 785 F. Supp. 2d at 908 (finding foreign subsidiary to be necessary party when parent company "may want to ascribe blame" to foreign subsidiary); *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1521 (D. Minn. 1996) (finding

---

in an agreement by HPE Russia to provide additional hardware that the hardware would fix memory and synchronization problems in the UDR network).  That is an improper form of general pleading and a practice entirely inconsistent with the heightened pleading requirements of Rule 9(b).

subsidiary manufacturer to be necessary when "plaintiff's complaint necessarily implicates [subsidiary's] distinct and strong interest in legal determinations regarding the safety of its products").

Finally, MegaFon's omission of HPE Russia threatens to subject HPE Russia to further litigation. If HPE Russia helps HPE obtain a favorable outcome, MegaFon could respond by pursuing its remedies under the contract against HPE Russia. *See* Ex. A, Framework Contract §§ 14.1, 12.1, 12.11, 12.11.1; Neyolov Decl. ¶ 24. It is this exact form of successive litigation against which Rule 19 is meant to guard. *See Hammons v. Wells Fargo Bank, N.A.*, 2015 WL 9258092, at *7 (N.D. Cal. Dec. 18, 2015) (absence of a contract signatory from fraud claim arising from the contract "create[d] a significant risk of repeated litigation" because, "[r]egardless of the outcome of this suit," the absent party "could assert the same claims in subsequent proceedings"); *Fiscus*, 2007 WL 4164388, at *7 (absence of contracting party whose alleged breach was the factual predicate of plaintiff's fraud claims created a "risk of successive litigation" because plaintiff could later bring a breach of contract action against the absent party on the same facts).

### B.     It Is Not Feasible To Join HPE Russia As a Party.

If an absent party's presence is "required" under Rule 19(a), then it must be joined in the action unless joinder is not "feasible." Rule 19(a) identifies three cases in which joinder of a required party is not feasible: "when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *Peabody W. Coal Co.*, 400 F.3d at 779.

MegaFon alleges diversity jurisdiction as the sole basis of this Court's subject matter jurisdiction. Compl. ¶ 9. The diversity statute confers on federal courts jurisdiction over civil actions between a "citizen of a State" and a "subject of a foreign state" in which more than $75,000 is in controversy. 28 U.S.C. § 1332(a)(2). Here, MegaFon alleges that it is a Russian citizen, that HPE is a citizen of Delaware and California, and that HPE Russia's performance caused it $28 million in damages. Compl. ¶¶ 6–9.

Adding HPE Russia would defeat the Court's jurisdiction because section 1332(a)(2) requires complete diversity. *Faysound Ltd. v. United Coconut Chems., Inc.*, 878 F.2d 290, 294–95 (9th Cir. 1989). The "citizenship of *each plaintiff*" in this case must be diverse "from the citizenship of *each defendant*." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (emphases added). If joined to this case, HPE Russia would be aligned as a defendant adverse to MegaFon. *See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir. 2000). But like MegaFon, HPE Russia is a foreign citizen.

Specifically, HPE Russia is a citizen of either Russia or The Netherlands, depending on whether the Court treats it as a corporation or a limited liability company ("LLC") for purposes of diversity. HPE Russia is organized under Russian law as what nominally translates to an LLC. Scherbina Decl. ¶ 6. But it is not an LLC as that terminology typically is used in the United States. HPE Russia enjoys many of "the characteristics that distinguish corporations from other business entities in the United States": It enjoys "personhood," meaning it has "perpetual existence, the right to contract and do business in its own name, and the right to sue and be sued." *BouMatic, LLC v. Idento Operations, BV*, 759 F.3d 790, 791 (7th Cir. 2014); *see* Scherbina Decl. ¶ 6. It should therefore be considered a corporation and a Russian citizen for diversity purposes. *See Boumatic*, 759 F.3d at 791; 28 U.S.C. § 1332(c)(1) (treating similar entity as a corporation for diversity purposes); Scherbina Decl. ¶¶ 6, 10 (explaining HPE Russia is incorporated and has its principal place of business in Russia).

Even if the Court were to treat HPE Russia as it would a U.S. LLC, HPE Russia simply would take on the citizenship of its members. *Satarco Kish Trading, LLC v. Wamar Int'l Grp., LLC*, 2016 WL 5937792, at *2, *5 (C.D. Cal. Jan. 6, 2016). And here its two parents—Hewlett-Packard The Hague B.V. and Hewlett-Packard Gouda B.V.—are Dutch corporations, organized under Dutch law, and headquartered in Amstelveen, The Netherlands. Scherbina Decl. ¶ 6; *see also BouMatic*, 759 F.3d at 791 (explaining that a Dutch B.V. is a form of close corporation considered to be a corporation for purposes of diversity).

Whether HPE Russia is Russian or Dutch, it cannot be joined. HPE Russia's addition would leave "foreign parties on both sides of the dispute," thereby destroying complete diversity. *U.S. Motors v. Gen. Motors Europe*, 551 F.3d 420, 424 (6th Cir. 2008). "[J]oinder is not feasible" under these circumstances. *Albers v. PMP Access Fund Mgr. LLC*, 2010 WL 2486369, at *4 (N.D. Cal. June 16, 2010).

### C.      HPE Russia Is an Indispensable Party Under Rule 19(b).

Because HPE Russia is a necessary party that cannot be joined, the Court must determine "whether [HPE Russia] is an 'indispensable party'" such that dismissal is appropriate. *Peabody W. Coal Co.*, 400 F.3d at 779. "A party is indispensable" if in "equity and good conscience," the Court should not allow the action to proceed in its absence. *Dawavendewa v. Salt River Project, Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1161 (9th Cir. 2002). Rule 19(b) identifies four factors for the Court to consider:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided . . . ; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed[.]

These factors "are to a certain extent overlapping," and the list is not meant to be exhaustive. Fed. R. Civ. P. 19 advisory committee note. Like Rule 19(a), this inquiry focuses on practical concerns; it "requires the district court to analyze various equitable considerations within the context of particular litigation, rather than to decide a purely legal issue." *Walsh v. Centeio*, 692 F.2d 1239, 1242 (9th Cir. 1982).

Rule 19(b)'s first factor favors dismissal. "[I]nsofar as it focuses on the absent party," the Rule 19(b) prejudice factor "largely duplicates" the necessary party analysis under Rule 19(a). *Am. Greyhound Racing*, 305 F.3d at 1024–25. The prejudice to HPE Russia therefore "stems from the same impairment of legal interests that make[] [it] a necessary party." *Dawavendewa*, 276 F.3d at 1162. Adjudicating whether HPE Russia breached its contractual obligations is necessary to resolve MegaFon's claims, but it is a question that cannot be answered without impairing HPE Russia's rights under the contract. *See* pp. 6–11, *supra*. Given Rule 19(b)'s "inclusive understanding" of prejudice, "it would be implausible to assume that a ruling by this Court that [HPE Russia] breached its contractual obligations to [MegaFon] would not adversely impact [HPE Russia's] interests." *Fiscus*, 2007 WL 4164388, at *6; *see also Carl Schroeter Gmbh & KO., KG. v. Crawford & Co.*, 2009 WL 1408100, at *5 (E.D. Pa. May 19, 2009) (subsidiary would be prejudiced by litigation of negligence claims against parent "because it would be deprived of the ability to defend its conduct" underlying the claims).

Rule 19(b)'s first factor also considers prejudice to the existing parties. HPE's defenses in this action necessarily would depend on establishing that HPE Russia, a distinct corporate entity, did not breach its contractual obligations to MegaFon. Those defenses would be substantially diminished in HPE Russia's absence. HPE Russia, not HPE, built MegaFon's UDR system. *See* Scherbina Decl. ¶ 9; Neyolov Decl. ¶¶ 5–20. And the evidence and witnesses relevant to its performance reside in Russia. *See* Neyolov Decl. ¶¶ 19–22; pp. 9–10, *supra*.

HPE Russia also may have defenses under the contract that would limit its liability for any deficient performance of the UDR system. *See* pp. 4, *supra*. Indeed, MegaFon seeks damages for what in essence is an alleged breach of contract in amounts and types that it cannot recover under the contract itself.

*Compare* Ex. A, Framework Contract § 12.11 (███████████████████████████████████ ████████████████████████████████████), *with* Compl. ¶ 87 (seeking recovery for, among other things, consequential damages related to loss of reputation and customers).  Unless HPE Russia is present to assert its contractual defenses to the alleged breach or the corresponding limits on damages, there is no guarantee that HPE, as a non-signatory third party, would be entitled to do so.  HPE could thus be exposed to liability for HPE Russia's allegedly deficient performance on the contract that far exceeds what MegaFon actually could recover under the terms of the contract or any governing Russian law.[16]

As to Rule 19(b)'s second factor, there is no meaningful way to lessen or avoid this prejudice.  The factual and legal determinations that threaten to prejudice HPE Russia, and by extension HPE, are "inextricably intertwined" with MegaFon's cause of action.  *Fiscus*, 2007 WL 4164388, at *7.  As a result, "no creative efforts to fashion suitable relief would enable the Court to sidestep the matter of [HPE Russia's] performance under the contract, which lies at the heart of Plaintiff's allegations."  *Id.*; *see also Toyota*, 785 F. Supp. 2d at 908–09 (explaining the court could "conceive[] of no solution to lessen prejudice" where the subsidiary's conduct was squarely implicated by the claims against its parent and litigating without the subsidiary would deprive it of the opportunity to defend its product and marketing).

Rule 19(b)'s third factor similarly counsels in favor of dismissal because a judgment rendered without HPE Russia would not be "adequate."  The adequacy of a judgment "refers to the 'public stake in settling disputes by wholes, whenever possible.'"  *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008).  In other words, it is concerned with the "efficient administration of justice and the avoidance of multiple litigation," rather than the "satisfaction of the [plaintiff's] claims."  *Id.*  As the court in *Fiscus* explained, this "third criterion weighs heavily in favor of finding the absentee[] indispensable" in a case such as this.  2007 WL 4164388, at *7.  "[T]he Court would be forced to analyze [HPE Russia and MegaFon's] performance under the [UDR contract] even though it could not issue a binding order as to the breach of contract claim" in HPE Russia's absence.  *Id.*  Whether it is successful or not, MegaFon

---

[16] Because this case sits at an early stage, these considerations favor dismissal even more strongly.  *See Walsh*, 692 F.2d at 1244 (that case was only seven-months-old, meaning "only preliminary discovery had been undertaken and no trial date had been set," was "an additional important factor supporting dismissal").

1
2
3
4
5
6

could later bring a second action on the contract itself that would require another forum to re-litigate the same issues of breach, causation, and injury. *Id.* Such successive litigation, and the inefficiencies, inconsistent judgments, and double recovery that might follow, is exactly the sort of outcome that Rule 19 aims to prevent. *Id.*; *see also Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 340–41 (D. Del. 2001) ("A judgment in Defendant's favor would not be 'adequate' because Plaintiffs could subsequently sue the Subsidiaries in a different forum based on essentially the same facts . . . .").

7
8
9
10
11

Finally, MegaFon would still have a remedy if the Court dismissed this case. *See* Fed. R. Civ. P. 19(b)(4). Indeed, MegaFon would have the remedy it bargained for in the Framework Contract. MegaFon never explains in its Complaint why, if it believes HPE Russia did not perform as required under the parties' contract, it did not bring an action for breach of contract against HPE Russia in the Moscow City Arbitration Court as the parties agreed. *See* pp. 4, 8–9, *supra*.

12
13
14
15
16
17
18
19
20

Nor is there any reason why "in equity and good conscience" MegaFon should be permitted to circumvent the dispute resolution procedure to which it expressly agreed. Russia is where HPE Russia and MegaFon signed and performed the Framework Contract; it is where the witnesses and the evidence are located; and it is where MegaFon agreed to resolve any disputes concerning whether HPE Russia performed. The availability of that option is sufficient to warrant dismissing an action where the foreign subsidiary (HPE Russia), whose conduct underlies the entirety of plaintiff's claims, cannot be joined. *See, e.g.*, *Carl Schroeter GmbH*, 2009 WL 1408100, at *5 (dismissing suit against U.S. parent predicated on alleged negligence of Venezuelan subsidiary because "Plaintiffs could presumably proceed against [the subsidiary] in Venezuela to recover for any losses caused by its negligence").[17]

21
22

MegaFon's Complaint should therefore be dismissed under Rule 12(b)(7) for failure to join a necessary and indispensable party.[18]

23
24
25
26

---

[17] *See also, e.g.*, *Timberlake v. Synthes Spine, Inc.*, 2011 WL 2607044, at *2–5 (S.D. Tex. June 30, 2011) (dismissing suit against parent for product failure because plaintiff could proceed in Germany or Switzerland against the two foreign subsidiaries that manufactured and distributed the product); *Jaffer*, 301 F.R.D. at 266 (dismissing where plaintiffs could seek remedy against absent party in a Ghanaian forum).

27
28

[18] Rule 19 is concerned with practical efficiencies and judicial economy. *See* pp. 13, *supra*. It should therefore give the Court further pause that adjudicating this dispute, with or without HPE Russia, would

1

**III.     MEGAFON HAS NOT PLED ANY ACTIONABLE CLAIM AGAINST HPE.**

2            This action cannot proceed without HPE Russia.  But even if it could, MegaFon's Complaint fails

3     to state a claim against HPE.  Ignoring the detailed technical specifications in the Framework Contract,

4     MegaFon brings three claims based on the premise that it was fraudulently induced into executing the

5     Contract by vague representations regarding HPE's experience, resources, and product superiority.  In

6     support, MegaFon strings together a series of generalized statements HPE or its subsidiary allegedly made.

7     But these statements do not suffice to state a claim.  The alleged pre-contract statements all are insufficient

8     for various reasons, and the statements that post-date the Framework Contract did not induce, and logically

9     could not have induced, MegaFon to enter into that agreement.  Finally, all three fraud claims should be

10    dismissed because they are time barred on their face.

11           **A.     The Alleged Pre-Contract Statements Do Not Support MegaFon's Claims.**

12           MegaFon's Complaint identifies a number of alleged "pre-contract false representations" by HPE.

13    Compl. ¶¶ 18–52.  But none of those alleged statements supports a fraud claim.  First, most of the

14    statements are puffery.  Second, the remaining pre-contract statements fail to satisfy Rule 9(b).  Third, all

15    of the pre-contractual statements fail to state a claim because the Framework Contract's integration clause

16    defeats justifiable reliance.  Fourth, MegaFon cannot assert fraud claims based on statements that were

17    incorporated into the Framework Contract with non-party HPE Russia.  Finally, to the extent MegaFon

18    seeks to rely on a theory of fraudulent non-disclosure, this theory fails because MegaFon does not plead

19    a duty to disclose or justifiable reliance on the alleged omissions.

20           **1.     Most of the alleged pre-contract statements are non-actionable puffery.**

21           Puffery—*i.e.*, "vague, exaggerated, generalized or highly subjective statements regarding a

22    product or business," *Cty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1039 (N.D. Cal.

23    2011)—cannot form the basis of a fraudulent inducement, negligent misrepresentation, or unfair

24    competition claim.  Such statements are "extremely unlikely to induce consumer reliance," an essential

25

26    require it to construe an extremely lengthy technical contract governed by Russian law—in which only
       the Russian language version is controlling—in a dispute between two Russian companies over a telecom
27    project that took place in Russia.  That dispute is better resolved by the Russian forum to which MegaFon
28    agreed to submit any disputes over HPE Russia's performance under the Framework Contract.

element of each claim.  *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008); *see also Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) (dismissing fraud and negligent misrepresentation claims based on puffery); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (puffery statements "are not actionable" under the UCL).  Whether a statement constitutes puffery is a question of law that district courts "often resolve" on a motion to dismiss.  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).

In support of its claims, MegaFon identifies three categories of statements that it alleges to be fraudulent, each of which constitutes non-actionable puffery.

The first set of statements relates to HPE's experience and expertise.  *See, e.g.*, Compl. ¶ 20 (RFI response highlighting "industry experience and unmatched breadth of products and services"); *id.* ¶ 21 ("The Response made much of HPE's experience: 'Among the key value-added differentiators that w[ould] help Megafon evaluate HP as its partner of choice is experience.' . . . HPE also stated that its 'HP team of sales and service professionals has the expertise to translate Megafon's requirements into technology solutions.'"); *id.* ¶ 22 ("'experience' and 'expertise' included the representation that HPE had already 'designed an architecture to meet the requirements of the largest Telecom operators in the world'"); *id.* ¶ 32 ("HPE once again touted its 'combined experience in projects that have been deployed in companies of similar size and with similar challenges as MegaFon.'"); *see also id.* ¶ 56 (alleging letter "provided assurances that 'MegaFon can be absolutely certain about the proposed decision, as HP has extensive experience in successful implementation of similar project globally'").  But California courts consistently treat such general representations of expertise or experience as puffery.  *See Cty. of Marin*, 836 F. Supp. 2d at 1038–39 (statements in RFP response that defendant had "deep experience," "a highly skilled and experienced" team, "experienced consultants," a "seasoned team," and an "experienced team that has worked together before" all deemed puffery); *In re Intrexon Corp. Sec. Litig.*, 2017 WL 732952, at *3 (N.D. Cal. Feb. 24, 2017) (statements that defendant was "a leader in the field" and had "accumulated extensive knowledge and experience" dismissed as puffery); *see also Cook, Perkiss and Liehe*, 911 F.2d at 246 (statements that defendants were "commercial collection experts" and had "comparable services to attorneys" were non-actionable "general assertions of superiority").

Next, MegaFon relies on a series of statements highlighting HPE's resources and commitment to the UDR project.  *See, e.g.*, Compl. ¶ 19 ("HPE described itself as a singular company 'with presence in more than 170 countries,' boasting 'extensive resources to facilitate Megafon's global business activity.'"); *id.* ¶ 26 ("Mr. Einav assured MegaFon's management that HPE's 'UDR product [wa]s strategic for our portfolio and we plan long term to continually invest and support the product evolution to satisfy our customer's needs around the world.'"); *id.* ¶¶ 28–29 ("Mr. Carrero stated that '[o]ur UDR product is strategic for our portfolio'" and that HP would "allocate the best resources," including "global experts," to the project); *id.* ¶ 31 ("HPE claimed to be 'the right partner' for MegaFon in part because of 'HP accountability.'").   Yet, as the Ninth Circuit held in *Glen Holly Entertainment*, statements that "generally describe[e] the 'high priority'" a company places on a product or its development are not actionable.  352 F.3d at 379 (dismissing as puffery statements that "Version 6.0 is being treated as a high priority at Lightworks and we have more than enough engineers and programmers to meet our goals" and "assurances that [defendant] placed a 'high priority' on system upgrades, and that it intended to allocate all necessary resources to ensure improvement of the Lightworks system"); *see also Cty. of Marin*, 836 F. Supp. 2d at 1039 (representations that defendant would "draw upon the experience of a full range of public sector specialists" and was "absolutely committed to the success of this project" held to be puffery).

Finally, MegaFon references statements highlighting the superiority and reliability of HPE's technology.  *See* Compl. ¶¶ 33–34 (citing Technical Solution document describing HPE's system as "an ideal solution" that produces "the highest levels of performance and reliability" and that "bring[s] a completely different level to availability and scale"); *see also id.* ¶ 75 ("Neri declared that HPE has 'a great product . . . with a great track record.'").  But "generalized statements of product superiority . . . are non-actionable puffery."   *Oestreicher*, 544 F. Supp. 2d at 973 ("faster, more powerful, and more innovative than competing machines," "higher performance," "longer battery life," and "faster access to data" each deemed to be puffery); *see also Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1132–33 (N.D. Cal. 2013) (statements touting "ultra-reliable performance" and "versatile, reliable system" are non-actionable); *Brothers v. Hewlett-Packard Co.*, 2006 WL 3093685, at *5 (N.D. Cal. Oct. 31, 2006) ("high-performance" and "top of the line" dismissed as puffery).

The highly generalized content of these alleged pre-contract representations makes them puffery, and therefore defeats reasonable reliance as a matter of law.  But the failure to plead facts supporting reasonable reliance is even more clear here, where the subjects of these alleged statements were addressed with great specificity in the Framework Contract.  For example, MegaFon complains that puffery led MegaFon to believe that HPE had implemented the exact system in the past and thus would be using a system that was "out-of-the-box."   Compl. ¶ 45; *see also id.* ¶¶ 102–03 (describing MegaFon's understanding that system would be "'out of the box' solution"); *id.* ¶ 32 (describing MegaFon's understanding that HPE "*has designed*" the architecture already).  But Exhibit 16 to the Framework Contract specifically disclosed that although it could be scaled, the technology HPE Russia planned to employ had been tested only on systems with two or four nodes.  *See* Ex. B, § 3.3 (noting testing had occurred "in production environment in two nodes synchronization and four nodes synchronization").  Exhibit 16 also stated that a data synchronization component would be custom-built for MegaFon.  *See id.* § 4.8.1 (HPE Russia would "develop[] [a] GUP server as a custom development for Megafon").  MegaFon could not have justifiably relied on its beliefs regarding an "out-of-the box" system when the contract language disclosed the opposite.  *See Intelligraphics, Inc. v. Marvell Semiconductor, Inc.*, 2009 WL 330259, at *7, 9 (N.D. Cal. Feb. 10, 2009) (rejecting fraudulent inducement claim based on representations of opposing party when defendant argued "those representations contradict the express language of the contract"); *see also Cty. of Marin*, 836 F. Supp. 2d at 1039-40 ("The detailed requirements negotiated in the [contract] confirm that [plaintiff] did not rely solely on the representations made in the RFP response . . . .").[19]

### 2.   The remaining statements that pre-date the Framework Contract do not satisfy Rule 9(b)'s heightened pleading standard.

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  When the defendant is a corporation, the plaintiff must specifically plead

---

[19] Relatedly, MegaFon asserts that it relied on "pre-contract representations" that "confirm[ed] . . . 'direct contractual relations' with HPE, not limited to the Russian representative office," Compl. ¶ 49, yet does not explain how its reliance could have been justified when the first page to the Framework Contract clearly indicates that only ZAO HP is a party to the Framework Contract. *See* Ex. A, Framework Contract, at 1; Compl. ¶ 53 (acknowledging that the Framework Contract was "between MegaFon and Hewlett-Packard A.O.").

"the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Flowers v. Wells Fargo Bank, N.A.*, 2011 WL 2748650, at *6 (N.D. Cal. July 13, 2011).  Additionally, for each statement, "the plaintiff must set forth what is false or misleading . . . and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).[20]

Several of the alleged pre-contract statements fail to satisfy this heightened pleading standard.  For example, MegaFon repeatedly asserts that HPE represented that the UDR system would have "99.999% reliability."  *See* Compl. ¶¶ 4, 5, 24, 41, 49, 90.  But nowhere does MegaFon explain who made this statement, to whom it was made, or when it was said.  In other instances, MegaFon attributes statements to unspecified "HPE personnel" or describes the recipients only as "MegaFon personnel."  *See id.* ¶ 31 (describing presentation but not identifying speaker or alleging whether speaker was employee of HPE or instead HPE Russia); *id.* ¶ 38 (listing representations allegedly made "[i]n numerous pre-contract oral communications between December 2012 and February 2013" by "the same" unspecified "HPE personnel" to "the same MegaFon personnel"); *id.* ¶¶ 39, 47, 48, 49 (alleging misrepresentations by HPE generally, without identifying the persons at HPE who made them, the persons at MegaFon to whom they were made, or the date on which they were transmitted).  This is not a mere technical error of pleading.  In a case where MegaFon seeks to transform a Russian contractual dispute into a U.S. fraud action, it is especially important that the demanding requirements of Rule 9(b) be met.  *See Bly-Magee*, 236 F.3d at 1018 (recognizing Rule 9(b)'s role in protecting against pretextual suits).[21]

---

[20] Rule 9(b) applies to all three claims asserted here.  *See United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1179 (C.D. Cal. 2009) (Rule 9(b) applicable to fraudulent inducement and negligent misrepresentation claims sounding in fraud); *Elias*, 950 F. Supp. 2d at 1131 (Rule 9(b) applicable to UCL claims sounding in fraud).

[21] Indeed, many of these statements fail to satisfy Rule 8, let alone Rule 9(b), as they do not differentiate between HPE and its non-party subsidiary HPE Russia.  *See Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) (holding that under Rule 8 "this confusion of which claims apply to which defendants would require that the complaint be dismissed"); *see also Orlando v. Carolina Cas. Ins. Co.*, 2007 WL 781598, at *8 (E.D. Cal. Mar. 13, 2007) (finding violation of Rule 9(b) where "Defendants and third party Alarm One [were] essentially lumped together as one").

### 3.      MegaFon could not justifiably rely on any of the pre-contract statements in light of the Framework Contract's integration clause.

Another reason these alleged pre-contract statements (*see* Compl. ¶¶ 18–52) fail to support actionable claims is that MegaFon's reliance on those statements is unjustified in light of section 17.2 of the Framework Contract.   Section 17.2 states explicitly that "[a]ll preliminary negotiations and correspondence [that] took place before signing this Contract lose force from the moment of its sign[ature] except the Protocol of Agreement (Exhibit 10 hereto)."   Ex. A, Framework Contract § 17.2.   Although courts sometimes find reliance even in the face of an integration clause, justifiable reliance by MegaFon is legally unsupported by the facts alleged here—a sophisticated entity entering into a detailed contract that addresses the specifics of the parties' requirements and expectations.  *See Woods v. Google Inc.*, 2011 WL 3501403, at *8–9 (N.D. Cal. Aug. 10, 2011) (finding no statutory standing to bring UCL claim when reliance on statements outside agreement was unreasonable in light of contract language and plaintiff's "sophistication"); *It's Just Lunch Int'l LLC v. Island Park Enter. Grp., Inc.*, 2009 WL 10673157, at *6 (C.D. Cal. Sept. 3, 2009) (rejecting reliance argument that contradicted plain language of contract); *Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*, 2008 WL 1925248, at *5 (S.D. Cal. Apr. 29, 2008) (no reasonable reliance when contract made "written disclaimers" to "sophisticated businesspeople").

### 4.      MegaFon cannot base its claims on any statements incorporated into the Framework Contract itself.

In paragraphs 32–37, MegaFon alleges several pre-contract technical representations that it contends were fraudulent.   MegaFon acknowledges, however, that these statements were included in a "Technical Solution document [that] was ultimately attached to the Framework Contract as Exhibit 16." Compl. ¶ 32 n.2.   This admission precludes MegaFon from relying on these statements for two reasons.

First, under the economic loss doctrine, a plaintiff cannot base claims sounding in fraud on statements made within a contract.   *See Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 991 (E.D. Cal. 2012) (dismissing fraud and negligent misrepresentation claims because "the economic loss doctrine 'requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise'"); *see also Super Chefs, Inc. v. Second Bite Foods, Inc.*, 2015 WL 12914330, at *3–4 (C.D. Cal. June 15, 2015) (dismissing UCL claim after concluding that underlying fraud claims were barred by

economic loss doctrine).  "This rule serves to prevent every breach of a contract from giving rise to tort liability and the threat of punitive damages."  *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012).  Accordingly, the Court should disregard any statements contained in the Technical Solution document when evaluating MegaFon's claims.[22]

Second, the Framework Contract was signed by HPE Russia—not HPE.  Thus, any statements made therein cannot form the basis for a claim against HPE.  *See, e.g.*, *United States v. Safran Grp.*, 2017 WL 235197, at *8 (N.D. Cal. Jan. 19, 2017) (fraud claims "cannot be imputed from one party to the other based purely on a parent-subsidiary relationship"); *Parent v. Millercoors LLC*, 2016 WL 3348818, at *7 (S.D. Cal. June 16, 2016) ("[UCL] cannot be predicated on vicarious liability."); *Compton v. Midland Mortgage*, 2016 WL 7479418, at *8 (C.D. Cal. Apr. 19, 2016) (element of fraud is that "*defendant* made a false representation" (emphasis added)).[23]

### 5.    Plaintiffs have not adequately pled a fraudulent omission theory.

MegaFon's allegations also are inadequate to the extent they rely on a theory that HPE should have told MegaFon certain facts.  "[F]raud in the concealment requires defendant to have been under a duty to disclose the concealed fact to the plaintiff."  *Flores v. GreenPoint Mortg. Funding, Inc.*, 2017 WL 1315577, at *2–3 (N.D. Cal. Apr. 7, 2017).  MegaFon has not alleged any facts showing a duty to disclose, so it cannot maintain a fraudulent omission theory.

In any event, this theory would be facially implausible.  While MegaFon asserts that "HPE knowingly omitted" information about how it had not previously integrated eight regional networks, Compl. ¶ 41; *see also id.* ¶ 43 (alleging that HPE did not "disclose that it had never previously built such a system"); *id.* ¶ 23 ("As MegaFon learned only years later, HPE had never successfully designed or deployed a UDR system of similar scale and complexity . . . ."), Exhibit 16 to the Framework Contract specifically discloses that the application was "tested in [a] production environment in two nodes synchronization and four nodes synchronization" and would have to be scaled accordingly.  Ex. B, § 3.3.

---

[22] For the same reason, the Court should disregard the allegations in paragraphs 54 and 55 because information "made clear" in the Framework Contract, including "numerous express warranties," cannot support a fraud claim. Compl. ¶¶ 54–55.

[23] Several of the post-contractual statements suffer from the same flaw. *See, e.g.*, Compl. ¶ 56.

Similarly, MegaFon erroneously claims that "[a]t no time did HPE disclose that it would be largely building the system for MegaFon from scratch."  Compl. ¶ 43; *see also id.* ¶ 45 ("HPE failed to disclose the risks that its proposal entailed, and instead misleadingly represented that it would be providing what was largely an out-of-the-box product.").  However, Exhibit 16 to the Framework Contract specified that HPE Russia would be required under the contract to "develop[] [a] GUP server as a *custom* development for Megafon."  Ex. B, § 4.8.1 (emphasis added).  Where, as here, a plaintiff's allegations are contradicted by documents referenced in the complaint, courts "need not accept [them] as true."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Any claim of fraudulent omission therefore fails.  *See Yadav-Ranjan v. Rushmore Loan Mgmt. Servs., LLC*, 2018 WL 3328499, at *2–3 (N.D. Cal. July 6, 2018) (dismissing fraud by omission claim for failure to allege justifiable reliance).

### B.    The Post-Contract Statements Could Not Have Induced Justifiable Reliance.

The Complaint also recites a series of allegedly false statements made after the Framework Contract was signed on April 16, 2013,[24] but those statements self-evidently fail to support MegaFon's claims, each of which sounds in fraudulent inducement.[25]  Common sense dictates that statements made after a contract was executed could not have induced its execution.  *See World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*, 66 F. Supp. 3d 1233, 1237 (N.D. Cal. 2014) (where "the ink was already dry on the deal documents by the time [the statements] were allegedly made," plaintiffs "could not have relied upon them as a basis for entering into the contracts"); *Jewelers Mut. Ins. Co. v. ADT Sec. Servs., Inc.*, 2009 WL 2031782, at *5 (N.D. Cal. July 9, 2009) (dismissing fraudulent inducement and negligent

---

[24] *See, e.g.*, Compl. ¶¶ 56 (May 20, 2013 letter); *id.* ¶¶ 72–73 (May 2017 statements).

[25] In each of the three counts of the Complaint, MegaFon asserts that "HPE made these misrepresentations . . . in order to induce MegaFon to hire HPE and award it the Framework Contract."  Compl. ¶ 92 (Count I); *see also id.* ¶¶ 107–109 (Count II alleging that "HPE made these representations to *induce* MegaFon to enter into the Framework Contract"; those misrepresentations were "material to MegaFon's decision *to award the upgrade contract* to HPE"; "MegaFon was fully justified in relying on HPE's repeated assurances *in entering into a contractual relationship*" (emphases added)); *id.* ¶ 114 (Count III alleging that "[a]ll of these damages, as well as the harm to MegaFon's reputation, would have been avoided had MegaFon not been *enticed* by HPE's deceptive business practices" (emphasis added)).

1    misrepresentation claims based on statements made after contract was signed because they did not "serve

2    as predicate misrepresentations to induce[] Plaintiff to *enter* into the contract").[26]

3        **C.      MegaFon's Claims Are Time Barred.**

4        Finally, it is apparent from the face of the Complaint that MegaFon's claims are untimely.  Under

5    California law, fraud claims (including negligent misrepresentation sounding in fraud) are subject to a

6    three-year statute of limitations, and unfair competition claims expire after four years.  Cal. Civ. Proc.

7    Code § 338(d) (fraud); Cal. Bus. & Prof. Code § 17208 (unfair competition); *Villegas v. Wells Fargo*

8    *Bank, N.A.*, 2012 WL 4097747, at *4 (N.D. Cal. Sept. 17, 2012) (negligent misrepresentation).

9    California's discovery rule halts the start of the limitations period until the earlier of the date the plaintiff

10   discovers the fraud or the date he "should have known of or suspected the facts underlying the cause of

11   action."  *Aiello v. BAC Home Loans Servicing, LP*, 2011 WL 13266352, at *4 (N.D. Cal. Sept. 30, 2011).

12       Here, all of the alleged pre-contract misrepresentations—the only representations that could have

13   induced MegaFon's execution of the Framework Contract—were made more than five years before

14   MegaFon filed its Complaint.  Thus, the Complaint "shows on its face that [the] claim[s] would be barred

15   without . . . the discovery rule," and MegaFon can survive dismissal only by "specifically plead[ing] facts

16   to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite

17   reasonable diligence."  *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1131–32 (N.D. Cal. 2009).

18       Nowhere in the Complaint does MegaFon explain when or how it discovered that HPE's

19   statements of experience, resources, or product superiority were purportedly false.  Instead, MegaFon

20   relies on the generalized assertion that it made this discovery "years later."  *See* Compl. ¶¶ 23, 30, 37, 40

21   ("As MegaFon learned only years later . . . .").  MegaFon's failure to plead "a certain time" at which it

22   discovered the connection between the alleged misrepresentations at issue and its injuries, and its failure

23

24

25

26   [26] In addition, a number of these statements constitute non-actionable puffery.  *See* pp. 16–19, *supra*; *see*
     *also, e.g.*, Compl. ¶¶ 56, 75.  Others do not satisfy Rule 9(b)'s heightened pleading standard.  *See* pp. 19–
27   20, *supra*; *see also, e.g.*, Compl. ¶ 65.

28

1   to identify the "manner of [its] discovery," defeats its claims.  *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d

2   868, 894 (N.D. Cal. 2013); *see also Rosal*, 671 F. Supp. 2d at 1132.[27]

3          The Complaint also fails to allege that MegaFon could not, with reasonable diligence, discover its

4   claims within the limitations period.  Indeed, the Complaint reveals that MegaFon was on inquiry notice

5   of its claims within months of the Framework Contract's execution.  *See* Compl. ¶ 62 ("*By August of 2013*,

6   MegaFon demanded an action plan from HPE to deal with the open issues of the UDR deployment, which

7   included poor performance of the solution . . . ." (emphasis added)); *id.* ¶ 63 ("Notwithstanding HPE

8   agreeing to provide a package of free goods and services to resolve MegaFon's financial claims . . . *in*

9   *February 2014*, these problems persisted." (emphasis added)); *id.* ¶ 64 ("*In October 2014*, MegaFon

10  informed HPE that it would no longer accept delivery of UDR project phases till the critical issues

11  plaguing the UDR deployment were solved." (emphasis added)).  Such inquiry notice is all that is required

12  to start the limitations clock.  *See Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1011 (N.D. Cal. 2015)

13  ("'The discovery rule . . . delays accrual until the plaintiff has, or should have, inquiry notice of the cause

14  of action.' . . . A plaintiff is on inquiry notice when 'he or she has reason at least to suspect a factual basis

15  for its elements.'"); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988) ("So long as a suspicion exists,

16  it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.").

17         Dismissal is warranted because MegaFon's claims expired before it filed this Complaint.

18                                          **CONCLUSION**

19         For the foregoing reasons, the Court should dismiss the case with prejudice under Federal Rules

20  of Civil Procedure 12(b)(6), 12(b)(7) and 9(b).

21  Dated: January 7, 2019                          Respectfully submitted,

22                                                  */s/ Kurt G. Calia*

23                                                  _____

24                                                  Clara J. Shin (Bar No. 214809)
                                                    COVINGTON & BURLING LLP

25

26  [27] Although MegaFon alleges that in 2017, it "became aware from the reports of its independent failure
    analysis consultants that HPE had grossly misrepresented its experience and expertise," Compl. ¶ 103, it

27  fails to explain how an "assess[ment] [of] the April and May 2017 catastrophic cascade failures," "their
    causes," and potential "solution[s]," Compl. ¶ 81, produced any new information regarding HPE's

28  experience and expertise.  "[C]onclusory allegations will not withstand demurrer."  *Rhynes v. Stryker
    Corp.*, 2011 WL 2149095, at *2 (N.D. Cal. May 31, 2011).

One Front Street, 35th Floor
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
E-mail: cshin@cov.com

John E. Hall (Bar No. 118877)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
E-mail:  jhall@cov.com

Kurt G. Calia (Bar No. 214300)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4717
E-mail: kcalia@cov.com
E-mail: kcahoy@cov.com

*Counsel for Defendant*
*Hewlett Packard Enterprise Co.*

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULES 9(b), 12(b)(6), AND 12(b)(7) - No. 5:18-cv-06463-NC