1

Clara J. Shin (Bar No. 214809)
COVINGTON & BURLING LLP
2 One Front Street, 35th Floor
San Francisco, CA 94111-5356
3 Telephone: (415) 591-6000
Facsimile: (415) 591-6091
4 E-mail: cshin@cov.com

5

John E. Hall (Bar No. 118877)
COVINGTON & BURLING LLP
6 One CityCenter
850 Tenth Street, NW
7 Washington, DC 20001-4956
Telephone: (202) 662-6000
8 Facsimile: (202) 662-6291
E-mail: jhall@cov.com

9

Kurt G. Calia (Bar No. 214300)
10 Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
11 3000 El Camino Real
5 Palo Alto Square, 10th Floor
12 Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
13 Facsimile: (650) 632-4717
E-mail: kcalia@cov.com
14 E-mail: kcahoy@cov.com

15 *Counsel for Defendant*
*Hewlett Packard Enterprise Co.*

16

17 UNITED STATES DISTRICT COURT

18 FOR THE NORTHERN DISTRICT OF CALIFORNIA

19 SAN JOSE DIVISION

20

| MEGAFON PJSC, a Russian corporation, | Civil Case No.: 5:18-cv-06463-NC |
|---|---|
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT** |
| v. | |
| HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation, | Date:  Wednesday, May 29, 2019 |
| Defendant. | Time:  1:00 p.m. Location: Courtroom 5 Judge:  Hon. Nathanael A. Cousins |

28

**TABLE OF CONTENTS**

Page

INTRODUCTION AND STATEMENT OF THE ISSUES ........................................................... 1

STATEMENT OF FACTS .............................................................................................. 3

    A.    The alleged pre-contract misrepresentations. ........................................................ 3

    B.    MegaFon's contract with HPE Russia. ................................................................ 3

    C.    MegaFon's persistent performance complaints beginning in 2013. ....................... 4

    D.    MegaFon's October 23, 2018 suit. ..................................................................... 5

    E.    The Court's order dismissing MegaFon's Complaint as time barred. .................... 5

ARGUMENT ............................................................................................................... 6

I.      LEGAL STANDARD. ......................................................................................... 6

II.    MEGAFON'S CLAIMS ARE TIME BARRED. ....................................................... 6

    A.    MegaFon fails to plead facts that would allow the discovery rule to delay accrual of its claims. ........................................................................................ 7

        1.    MegaFon fails to provide the "who," "when," and "how" facts regarding its alleged discovery that HPE lacked the experience and expertise to deliver an out-of-the-box solution. ........................................ 8

        2.    The allegations in the Amended Complaint show that MegaFon had inquiry notice of its claims more than four years before filing suit. ........... 9

            a)    Based on what MegaFon alleges to be the basis of its fraud claims, the contract itself would have put MegaFon on notice that the alleged pre-contract representations were incorrect. ..................... 9

            b)    MegaFon cannot plausibly contend it lacked notice when it began complaining of the system's performance five years before filing suit. ............................................................................................. 11

            c)    MegaFon's purported excuses for not bringing timely fraud claims do not defeat its notice of those claims. ........................................ 13

        3.    MegaFon does not allege facts showing that it exercised reasonable diligence in attempting to discover its claims. .......................................... 13

    B.    MegaFon does not allege sufficient facts to invoke the doctrine of fraudulent concealment to toll the statutes of limitations. .................................... 14

        1.    Fraudulent concealment does not apply because MegaFon's own allegations demonstrate it had knowledge of facts giving rise to its claims. ...................................................................................................... 14

2.      MegaFon failed to act diligently in trying to uncover the facts of its claims. ................................................................................................. 16

C.      Dismissal with prejudice is warranted. ................................................................. 16

III.    THE NEW ALLEGATIONS IN THE AMENDED COMPLAINT CONFIRM THAT HPE RUSSIA IS A NECESSARY AND INDISPENSABLE PARTY AND THAT INTERLOCUTORY REVIEW IS WARRANTED IF THE COURT DISAGREES ................................................................................................................ 16

A.      Whether HPE Russia is a necessary party is a controlling question of law.......... 17

B.      There is substantial ground for difference of opinion as to whether HPE Russia is a necessary party......................................................................................... 18

1.      There is substantial ground for difference of opinion as to whether MegaFon's tort claims will require resolution of key contractual questions. ................................................................................................. 18

2.      There is substantial ground for difference of opinion as to whether HPE Russia's forum selection clause applies to this suit. ................................. 20

3.      There is substantial ground for difference of opinion as to whether a parent company's interests are the same as those of its subsidiary when the two have differing contractual rights. ................................................. 21

C.      An immediate appeal will materially advance the termination of this litigation. ................................................................................................................ 22

CONCLUSION.................................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adema Techs., Inc. v. Wacker Chem. Corp.*,
  657 F. App'x 661 (9th Cir. 2016) .................................................................................20

*Am. Greyhound Racing, Inc. v. Hull*,
  305 F.3d 1015 (9th Cir. 2002) ......................................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................6

*Bull v. Chandler*,
  1992 WL 103686 (N.D. Cal. Mar. 12, 1992)...........................................................10, 15

*Calvi v. Prudential Securities, Inc.*,
  861 F. Supp. 69 (C.D. Cal. 1994) ..................................................................................10

*Conerly v. Westinghouse Elec. Corp.*,
  623 F.2d 117 (9th Cir. 1980) ...........................................................................................6

*Cooper v. Tokyo Electric Power Co.*,
  166 F. Supp. 3d 1103 (S.D. Cal. 2015)..........................................................................22

*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*,
  142 F.3d 1266 (Fed. Cir. 1998).....................................................................................21

*Davies v. Krasna*,
  14 Cal. 3d 502 (1975) ....................................................................................................13

*Deutsche Bank Nat'l Trust Co. v. F.D.I.C.*,
  854 F. Supp. 2d 756 (C.D. Cal. 2011) ...........................................................................17

*Encatto Ltd. v. Obscura Digital Inc.*,
  2013 WL 394195 (N.D. Cal. Jan. 30, 2013) .............................................................19, 21

*Extra Equipamentos E Exportacao Ltda. v. Case Corp.*,
  361 F.3d 359 (7th Cir. 2004) .........................................................................................21

*Felix v. Anderson*,
  2016 WL 3540980 (N.D. Cal. June 29, 2016) ................................................................15

*Fid. Nat'l Title Ins. Co. v. Terra Mktg., Inc.*,
  2015 WL 12765114 (C.D. Cal. Sept. 2, 2015) ...............................................................19

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*,
  868 F. Supp. 2d 983 (E.D. Cal. 2012)...............................................................................7

*Garcia v. Gen. Motors LLC*,
   2018 WL 6460196 (E.D. Cal. Dec. 10, 2018) .......................................................8, 12, 14

*Gibson v. United States*,
   781 F.2d 1334 (9th Cir. 1986) ...................................................................................15

*Hamilton Materials, Inc. v. Dow Chem. Corp.*,
   494 F.3d 1203 (9th Cir. 2007) ..........................................................................9, 10, 11

*Hawaii ex rel. Louie v. JP Morgan Chase & Co.*,
   921 F. Supp. 2d 1059 (D. Haw. 2013) ......................................................................18

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) ......................................................................22

*Jaffer v. Standard Chartered Bank*,
   301 F.R.D. 256 (N.D. Tex. 2014) ..............................................................................21

*Jamul Action Comm. v. Chauduri*,
   200 F. Supp. 3d 1042 (E.D. Cal. 2016).....................................................................19

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .....................................................................................9

*Krzyzanowsky v. Orkin Exterminating Co.*,
   2009 WL 481267 (N.D. Cal. Feb. 24, 2009) .....................................................12, 14, 15

*Kuehner v. Dickinson & Co.*,
   84 F.3d 316 (9th Cir. 1996) .......................................................................................17

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) .....................................................................................20

*Miller v. Lakeside Village Condominium Ass'n*,
   1 Cal. App. 4th 1611 (1991) ......................................................................................13

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*,
   210 F.3d 246 (4th Cir. 2000) .....................................................................................21

*New Amsterdam Project Mgmt. Humanitarian Found. v. Laughrin*,
   2009 WL 1513390 (N.D. Cal. May 29, 2009) .............................................................9

*Norgart v. Upjohn Co.*,
   21 Cal. 4th 383 (1999) ...........................................................................................9, 14

*Petersen v. Boeing Co.*,
   715 F.3d 276 (9th Cir. 2013) .....................................................................................21

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
   522 F.3d 1049 (9th Cir. 2008) ............................................................................12, 15

iv

*Plumlee v. Pfizer, Inc.*,
    664 F. App'x 651 (9th Cir. 2016) ...................................................................11, 12, 16

*Plumlee v. Pfizer, Inc.*,
    2014 WL 4275519 (N.D. Cal. Aug. 29, 2014) ..............................................................11

*Polanco v. H.B. Fuller Co.*,
    941 F. Supp. 1512 (D. Minn. 1996) ............................................................................22

*Potter v. Chevron Prods. Co.*,
    2018 WL 4053448 (N.D. Cal. Aug. 24, 2018) ..............................................................6

*Pujol v. Shearson Am. Express, Inc.*,
    877 F.2d 132 (1st Cir. 1989) .......................................................................................21

*Raifman v. Wachovia Sec., LLC*,
    649 F. App'x 611 (9th Cir. 2016) ..........................................................................12, 16

*Raifman v. Wells Fargo Advisors, LLC*,
    2014 WL 12013436 (N.D. Cal. Mar. 31, 2014)......................................................11, 12

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) .......................................................................................18

*Richards v. Lloyd's of London*,
    135 F.3d 1289 (9th Cir. 1998) ................................................................................20, 21

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974).....................................................................................................21

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .........................................................................................6

*Stickrath v. Globalstar, Inc.*,
    2008 WL 5384760 (N.D. Cal. Dec. 22, 2008) .............................................................12

*Super Chefs, Inc. v. Second Bite Foods, Inc.*,
    2015 WL 12914330 (C.D. Cal. June 15, 2015) ..........................................................2, 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).......................................................................................................9

*Thimbler, Inc. v. Unique Sols. Design, USA Ltd.*,
    2014 WL 1663418 (E.D.N.C. Apr. 25, 2014)..............................................................21

*Torres v. Ford Motor Co.*,
    2018 WL 2088268 (E.D. Cal. May 4, 2018) ...............................................................14

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) .......................................................................................6

*Wilton Miwok Rancheria v. Salazar*,
  2010 WL 693420 (N.D. Cal. Feb. 23, 2010) .......................................................................22

*Yamauchi v. Cotterman*,
  84 F. Supp. 3d 993 (N.D. Cal. 2015) ...................................................................................16

**Statutes**

28 U.S.C. § 1292(b) ................................................................................................. *passim*

**Other Authorities**

U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/tourism-
  visit/visitor.html (last visited Apr. 8, 2019) .........................................................................23

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Wednesday, May 29, 2019, at 1:00 p.m.,[1] or as soon thereafter as counsel may be heard before the Honorable Nathanael M. Cousins in Courtroom 5 of the United States District Court, Northern District of California, San Jose Division, 280 South First Street, San Jose, California, Defendant Hewlett Packard Enterprise Co. ("HPE") will move to dismiss with prejudice MegaFon's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7).

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION AND STATEMENT OF THE ISSUES

Plaintiff MegaFon PJSC ("MegaFon") brings this suit for fraud, negligent misrepresentation, and violation of California's unfair competition law ("UCL").  It does so based on a theory that HPE wrongfully induced MegaFon to enter into an April 2013 contract by making certain purportedly false pre-contract statements.  Those pre-contract statements all occurred more than five years before MegaFon filed suit on October 23, 2018, so the Court dismissed MegaFon's claims as time barred.  ECF No. 50 ("Order").  The Court granted MegaFon leave to amend but specified the requirements that MegaFon must meet if it tries to revive its claims by invoking either the discovery rule or the fraudulent concealment tolling doctrine.  MegaFon added six pages of allegations to make it appear that it had addressed the statute of limitations problems.  But the additional material still lacks well-pleaded allegations that, when considered in the context of the misrepresentations MegaFon alleges, are sufficient to meet the standards articulated by the Court.

*First*, while the Amended Complaint asserts that MegaFon did not learn of HPE's purported fraud until 2017, it fails to plead facts that explain "who made these discoveries and how they did so," which MegaFon must do to invoke the discovery rule.  Order at 11.  In addition, far from pleading facts that show why the alleged fraud and negligent misrepresentation "could not have been discovered earlier despite reasonable diligence," *id.*, the allegations in the Amended Complaint demonstrate the *opposite*— that MegaFon had ample information more than four years before filing suit to put it on inquiry notice of

---

[1] HPE originally proposed noticing this hearing for Wednesday, May 15, 2019, at 1:00 p.m., but moved the noticed hearing day to May 29 after MegaFon's counsel told HPE they were not available for a hearing on either May 15 or May 22.

what it now claims to be HPE's false statements.  Provisions of the contract itself, which was executed nearly six years ago, contradicted the alleged core assurances from HPE that now form the basis for MegaFon's fraud claims.  Moreover, MegaFon's own allegations show that it complained about purported performance problems almost immediately after performance began.  According to MegaFon, the issues were so severe that it made financial penalty demands under the contract and eventually refused to accept further deliveries.  Accepting these allegations as true, there can be no serious question that a reasonable person in MegaFon's position would have suspected at that time, based on what it now contends to be its theory of fraud, that it had a claim against HPE.  Nothing more is required to start the limitations period.

*Second*, the Amended Complaint fails to plead facts sufficient to invoke fraudulent concealment to toll the statute of limitations.  As the Court held, MegaFon must plead facts with particularity under Rule 9(b) showing that it "did not have actual or constructive knowledge of the facts giving rise to these claims" and "that it acted diligently in trying to uncover those facts."  Order at 11.  MegaFon fails to meet this demanding burden.  The explicit statements in the contract and the alleged sustained performance problems from the outset of the contract show that MegaFon was aware of a chance that HPE had misrepresented its experience or ability to perform according to MegaFon's theory of its case.  That is all that is required to establish notice.  In addition, MegaFon fails to allege facts showing that it exercised reasonable diligence to investigate its claims.  Under the law, MegaFon's decision to wait and see if things got better does not, as a matter of law, toll the applicable statutes of limitations.

*Finally*, the new allegations underscore that HPE Russia, the signatory to the contract whose performance is in dispute, is a necessary and indispensable party.  If the Court does not dismiss the case as time barred or for failure to join HPE Russia, HPE respectfully requests that the Court certify its order for interlocutory appeal.  HPE Russia's contractual forum selection clause was designed to prevent the precise situation unfolding here—U.S. litigation of six-plus year-old fraud claims, tied inextricably to a complex technical project implemented in Russia, where HPE will be at a substantial practical disadvantage in obtaining admissible evidence and testimony from critical non-party Russian witnesses. The issue involves a controlling question of law that meets the requirements for appeal pursuant to 28 U.S.C. section 1292(b).

1

## STATEMENT OF FACTS[2]

### A.      The alleged pre-contract misrepresentations.

In 2011, MegaFon solicited proposals for a strategic project to "rebuild key elements of MegaFon's wireless [cellular] network in Russia."  ECF No. 52 ("Am. Compl.") ¶ 3.  HPE responded, and "extensive negotiations" followed.  *Id.*  MegaFon eventually entered into a five-year contract for the project with HPE's Russian subsidiary, "HPE Russia."  *Id.* ¶ 53; *see* ECF No. 25-6 at 1 (Declaration of Kurt Calia in Support of Motion To Dismiss ("Calia Decl."), Ex. A, Framework Contract).[3]

MegaFon claims that it was wrongfully induced to enter into the contract based on pre-contract misrepresentations made by HPE in 2012 and 2013 relating to its experience and expertise with "similar large-scale IT projects."  *See, e.g.*, Am. Compl. ¶¶ 19–23, 50, 52; Order at 9.  Based on those representations, MegaFon allegedly thought it would receive an "out-of-the-box" system with "99.999% reliability" and little risk of implementation problems.  Am. Compl. ¶¶ 43, 45, 52; Order at 8.  MegaFon's case theory is that it awarded a $28 million contract to rebuild "key elements" of its business based not on the detailed architecture of the UDR system or the hundreds of pages of carefully negotiated specifications, but instead on general assertions during the bidding process that HPE had "experience," "technical expertise," "capabilities," and "resources," and that the system was "proven and tested" and "reliable and fault-tolerant."  *Id*. ¶¶ 5, 17, 19, 28, 29, 40.

### B.      MegaFon's contract with HPE Russia.

MegaFon and HPE Russia signed the contract on April 16, 2013.  That contract consisted of a term sheet along with many other exhibits and addenda incorporated into the main document.  *See* ECF No. 25-6 § 17.7 (Calia Decl. Ex. A, Framework Contract).  One of the exhibits, the Technical Solution document MegaFon repeatedly references in the Amended Complaint, provided some technical details relating to the UDR project but also noted that "[e]xact details of the UDR deployment, and failover scenario would have to be discussed with Megafon in a workshop."  ECF No. 25-8 § 3.1 (Calia Decl. Ex.

---

[2] HPE disputes MegaFon's characterization of events and disputes its claims on the merits, but it assumes the allegations to be true solely for the purposes of this motion to dismiss.

[3] MegaFon originally contracted with ZAO Hewlett-Packard A.O., the predecessor of HPE Russia.  *See* Am. Compl. ¶ 53; Order at 2.  This motion uses "HPE Russia" to refer to both ZAO HP and its successor in the contract, unless otherwise noted.

B, Technical Solution (Exhibit 16 to Framework Contract)); *see also* Am. Compl. ¶¶ 32–39 & n.2.  That document also specified that certain components of the solution would be custom-built for MegaFon.  *See* ECF No. 25-8 §§ 4.6.1 (describing "a custom development component"), 4.8.1 (HPE Russia would "develop[] [a] GUP server as a custom development for Megafon").  And it disclosed that the UDR synchronization application had been previously used only in systems with two or four nodes—not the six that MegaFon required.  *See id.* § 3.3 (noting testing had occurred "in production environment in two nodes synchronization and four nodes synchronization"); ECF No. 25-10, at 1 (Calia Decl. Ex. D, Project Plan (Exhibit 17 to Framework Contract)) (specifying the UDR system would have "6 Nodes").  Recognizing that performance was not assured, the contract contained ███████████████████ █████████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████.  ECF No. 25-6 § 12.2; *id.* § 12.3.1.  In addition, HPE Russia's work was ██████████████████████████████████████████████████ ████████████████████████████████████████.  *Id.* §§ 10.4–10.17; ECF No. 25-10.

The contract further provided that the parties must attempt to resolve "[a]ll disputes [that] appear because of this Contract by negotiation[]" and, if that fails, through trial in the Moscow City Arbitration Court applying the "laws of [the] Russian Federation."  ECF No. 25-6 §§ 14.1, 12.1.

### C.    MegaFon's persistent performance complaints beginning in 2013.

By August 2013, only months after executing the Framework Contract, MegaFon alleges that the UDR system was plagued by "poor performance . . . and extremely low productivity of provisioning." Am. Compl. ¶ 62.  These alleged performance problems related to the customer database's failure to synchronize in real-time, *id.* ¶¶ 61, 90, "which was not only a contractual requirement but the fundamental purpose of the upgrade for which MegaFon contracted," *id.* ¶ 59.  MegaFon therefore "demanded an action plan" to deal with these "open issues," *id.* ¶ 62, and for months, the parties worked to fix the problems, *see id.* ¶¶ 90–92.  But issues allegedly remained by February 2014, driving MegaFon to make financial claims that led to the payment of contractual penalties.  *Id.* ¶ 63.  MegaFon contends that the "problems persisted" until October 2014, when the alleged performance issues prompted MegaFon to "inform[] HPE that it would no longer accept delivery of UDR phases [until] the critical issues plaguing the UDR deployment were solved."  *Id.* ¶¶ 62–64; *see also id.* ¶ 93.  Even though these alleged problems related to

the "fundamental purpose of the upgrade" and had persisted for at least 14 months leading up to October 2014, MegaFon nonetheless asserts that it did not have reason to suspect its fraud claims until almost three years later when two system outages occurred. *See id.* ¶¶ 111–12. MegaFon alleges repeatedly that it believed HPE could "resolve the implementation issues," "deliver on its representations," and "the problem would disappear." *See id.* ¶¶ 91, 93, 95.

      **D.**    **MegaFon's October 23, 2018 suit.**

      On October 23, 2018, MegaFon filed a Complaint against HPE. The Complaint alleged that HPE induced MegaFon to enter a contract that HPE Russia could not, and did not, perform. HPE allegedly did so via 2012 and 2013 pre-contract misrepresentations of its experience and expertise. Central to MegaFon's claims and damages theory were allegations that HPE Russia's UDR system failed to "meet the contracted-for technical requirements." *Id.* ¶ 122; *see also id.* ¶¶ 65, 67, 113, 124, 133, 141. HPE moved to dismiss pursuant to Rules 9(b), 12(b)(6), and 12(b)(7). ECF No. 25-4 ("Mot.).

      **E.**    **The Court's order dismissing MegaFon's Complaint as time barred.**

      The Court granted in part and denied in part HPE's motion, holding that MegaFon failed to allege "sufficient facts about (1) how and when the alleged fraud and negligent misrepresentation were discovered, or (2) why they could not have been discovered earlier despite reasonable diligence." Order at 11. Because the alleged pre-contract misrepresentations occurred more than five years before the Complaint was filed, MegaFon's claims were time barred. *Id.* at 10–11. The Court granted leave to amend but noted the stringent requirements for pleading both delayed accrual pursuant to the discovery rule and fraudulent concealment tolling. As the Court explained, the discovery rule requires a plaintiff to "affirmatively excuse his failure to discover the fraud within [the statutory period] by showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Id.* at 10 (internal quotation marks omitted). Fraudulent concealment tolling requires allegations "(1) that HPE took affirmative acts to mislead it; (2) that MegaFon did not have actual or constructive knowledge of the facts giving rise to these claims; and (3) that it acted diligently in trying to uncover those facts." *Id.* at 11.

      MegaFon filed its Amended Complaint on March 26, 2019, and HPE now moves to dismiss.

**ARGUMENT**

## I.   LEGAL STANDARD.

A complaint must contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When evaluating a motion under Rule 12(b)(6), a court need not credit "unwarranted deductions of fact," "unreasonable inferences," or allegations that are "merely conclusory" or that "contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).[4]

For claims sounding in fraud, Rule 9(b) further requires a plaintiff to "state with particularity the circumstances constituting fraud."  This includes "'the who, what, when, where, and how of the misconduct charged,' [and] 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Rule 9(b) applies equally to fraudulent concealment allegations. *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980).

Rule 12(b)(7) provides for dismissal of a complaint if an absent party needed for just adjudication of the claim under Rule 19 cannot be joined.  In resolving a motion under Rule 12(b)(7), "the court may consider evidence outside of the pleadings." *Potter v. Chevron Prods. Co.*, 2018 WL 4053448, at *4 (N.D. Cal. Aug. 24, 2018).

## II.   MEGAFON'S CLAIMS ARE TIME BARRED.

The relevant statutes of limitations for MegaFon's claims are three years (for the fraud and negligent misrepresentation claims) and four years (for the unfair competition claim).  *See* Order at 10. These statutes of limitations began to run when MegaFon "discover[ed], or should have discovered, the misrepresentation or fraud." *Id.*

---

[4] Because the Court denied HPE's Rule 12(b)(6) arguments (other than the statute of limitations argument), it does not repeat those arguments here.  HPE respectfully maintains that the same deficiencies are present in the Amended Complaint and preserves, and in no way waives, any arguments with respect to those deficiencies.

MegaFon's claims are premised on a theory that it was wrongfully induced to enter into the April 2013 contract.  The relevant pre-contract representations all "occurred more than five years before [the Complaint] was filed."  Order at 10.[5]  Given the age of the statements on which its claims are based, MegaFon's claims are time barred unless it adequately alleges either: (1) that the discovery rule delayed accrual of its claims until a point within the limitations period; or (2) that the fraudulent concealment doctrine tolled the expiration of the limitations period.  *See id.*  The Amended Complaint fails to allege facts sufficient to support either rule, so MegaFon's claims should be dismissed as time barred.

### A.   MegaFon fails to plead facts that would allow the discovery rule to delay accrual of its claims.

As this Court ruled, to invoke the discovery rule, "MegaFon must plead that it did not and could not have discovered the claims within the limitations period."  *Id.*  That requires MegaFon to "show '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'"  *Id.*  In other words, MegaFon "must 'affirmatively excuse [its] failure to discover the fraud within [the statutory period] by showing that [it] was not negligent in failing to make the discovery sooner and that [it] had no actual or presumptive knowledge of facts sufficient to put [it] on inquiry.'"  *Id.*  "The burden is on the plaintiff to show that it exercised this diligence."  *Id.*

The Amended Complaint does not meet this high bar for three independent reasons.  First, MegaFon fails to allege specifically "who made the[] discoveries" that HPE's alleged misrepresentations about its experience with similar systems were false, "and how they did so."  Order at 11.  Second, MegaFon's allegations of immediate and sustained complaints regarding contractual performance show it had suspicion of wrongdoing sufficient to put it on inquiry notice before October 23, 2014.[6]  Third, MegaFon does not allege facts supporting reasonable diligence in discovering the purported fraud.

---

[5] MegaFon must rely on pre-contract representations because fraud claims require "harm above and beyond a broken contractual promise."  *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 991 (E.D. Cal. 2012) (dismissing fraud and negligent misrepresentation claims based on the economic loss doctrine); *see also Super Chefs, Inc. v. Second Bite Foods, Inc.*, 2015 WL 12914330, at *3–4 (C.D. Cal. June 15, 2015) (dismissing UCL claim after concluding that underlying fraud claims were barred by economic loss doctrine).

[6] MegaFon's fraud and negligent misrepresentation claims are time barred if MegaFon had reason to suspect the statements were not true before October 23, 2015, and the UCL claim is time barred if notice arose before October 23, 2014.

1.     **MegaFon fails to provide the "who," "when," and "how" facts regarding its alleged discovery that HPE lacked the experience and expertise to deliver an out-of-the-box solution.**

The Court directed MegaFon to "clarify precisely when it discovered the fraud and misrepresentation" and to "provide more detail such as who made these discoveries and how they did so." Order at 11.  The Amended Complaint fails to comply with this directive.

Key to the inducement theory MegaFon alleges is that it relied on HPE's "purportedly vast experience with and expertise in similar systems."  Am. Compl. ¶ 116.[7]  MegaFon therefore allegedly thought it would receive "what was largely an out-of-the-box product."  *Id.* ¶ 45.  MegaFon contends that but for this understanding of HPE's experience, it would have selected another provider.  *Id.* ¶ 52.

Yet MegaFon fails to provide specifics as to who, how, and when it learned that HPE allegedly lacked the experience with similar systems that MegaFon purportedly relied on when signing the contract.  MegaFon's new allegations assert that it "was for the first time made aware that HPE had misrepresented its experience with a similar UDR system" after the 2017 system outages.  Am. Compl. ¶ 111.  And it states in conclusory fashion that this awareness arose "[a]s a result of [2017] independent reports."  *Id.*  But MegaFon never explains who discovered that HPE's experience was allegedly misrepresented or what the "independent reports" stated about HPE's experience that MegaFon did not already know.  *Id.*  Indeed, MegaFon characterizes these reports as technical analyses designed to "assess the causes of" the 2017 outages and does not contend that they addressed HPE's pre-contract experience or past projects.  *Id.*

Because MegaFon has not adequately alleged the "who, when or how" details of its supposedly belated 2017 discovery that HPE allegedly misrepresented its experience, the claims should be dismissed as time barred.  *See* Order at 11; *see also Garcia v. Gen. Motors LLC*, 2018 WL 6460196, at *5 (E.D. Cal. Dec. 10, 2018) (dismissing fraud claims as time barred when "Plaintiffs offer[ed] conclusory allegations that realization of a non-specific engine defect caused them to realize . . . [defendant] had made false

---

[7] *See also id.* ¶ 118 (claiming that HPE made alleged misrepresentations "to convince MegaFon that HPE had the global expertise and experience to create the touted system to meet MegaFon's needs and to induce MegaFon to award the upgrade contract to HPE"); *id.* ¶ 120 ("MegaFon justifiably relied on HPE's systemic and repeated assurances regarding its experience and capability, in entering into a contract with HPE's Russian representative office."); *id.* ¶ 129 (negligent misrepresentation claim based on alleged "(at best) half-truths about HPE's experience with 'similar systems' and its proposed technical implementation being a well-known, tested, essentially 'out of the box,' solution"); *id.* ¶ 140 (UCL claim similarly based on alleged misrepresentations regarding "HPE's experience, expertise, and capabilities").

representations" because "Plaintiffs do not offer sufficient support to fill the factual gaps in this chain of reasoning, either explicitly or implicitly").

### 2. The allegations in the Amended Complaint show that MegaFon had inquiry notice of its claims more than four years before filing suit.

"The threshold for inquiry notice in California is quite low—that is, very little is required to put a plaintiff on inquiry notice and thus cause the limitations period to begin to run." *New Amsterdam Project Mgmt. Humanitarian Found. v. Laughrin*, 2009 WL 1513390, at *3 (N.D. Cal. May 29, 2009). "[T]he plaintiff discovers the cause of action when he at least *suspects* a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof . . . ." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397–98 (1999) (emphasis added). A plaintiff is on inquiry notice of fraud-based claims when "there [i]s a chance, no matter how slight," of a misrepresentation. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007); *see also New Amsterdam*, 2009 WL 1513390, at *3 ("[A] suspicion of wrongdoing, coupled with a knowledge of the harm and its cause, commences the limitations period.").

### a) Based on what MegaFon alleges to be the basis of its fraud claims, the contract itself would have put MegaFon on notice that the alleged pre-contract representations were incorrect.

MegaFon alleges that HPE misled it regarding the "risks that its proposal entailed" by misrepresenting that the system would be an "out-of-the-box" product and that HPE had prior experience with similar systems. Am. Compl. ¶¶ 43, 45. According to MegaFon, it "learned only years later" that "HPE had never successfully designed or deployed a UDR system of similar scale and complexity . . . ." *Id.* ¶ 23; *accord id.* ¶¶ 30, 37, 40.

In contrast to MegaFon's assertions, the contract shows that MegaFon was on notice of its claims at least by the time it signed on April 16, 2013.[8] The contract expressly stated that certain components would be custom-built for MegaFon. *See* ECF No. 25-8 §§ 4.6.1 (Calia Decl. Ex. B, Technical Solution)

---

[8] The Court can consider the contract, which includes several exhibits and addenda, because it is incorporated by reference into the Amended Complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference . . . ."); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (explaining that "the 'incorporation by reference' doctrine . . . permits [courts] to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading").

9

(describing "a custom development component"), 4.8.1 (HPE Russia would "develop[] [a] GUP server as a custom development for Megafon").  The contract also disclosed that the UDR synchronization application had been used previously only in systems with two or four nodes—not the six that MegaFon required.  *See id.* § 3.3 (noting testing had occurred "in production environment in two nodes synchronization and four nodes synchronization"); ECF No. 25-10, at 1 (Calia Decl. Ex. D, Project Plan) (specifying the UDR system would have "6 Nodes").  And the contract informed MegaFon that "[e]xact details of the UDR deployment, and failover scenario" were not pre-ordained and "would have to be discussed with MegaFon in a workshop."  *See* ECF No. 25-8, at 10 (Calia Decl. Ex. B).

Moreover, the structure of the contract reaffirmed the complexity and inherent risk involved in the customized project.  MegaFon was required to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  *See* ECF No. 25-6 §§ 10.4–10.17, 12.2, 12.3.1; *cf.* Am. Compl. ¶¶ 49, 63–64.  Thus, by no later than the time it signed the contract, MegaFon was on inquiry notice that important system components would be custom-designed for MegaFon, past projects were not exactly the same as the MegaFon project, and the project was not without risk.  *Cf.* Am. Compl. ¶¶ 5, 23, 30, 37, 40, 45, 111–12, 118, 120, 130, 136–37 (claiming to have been misled on these issues).

Fraud claims have been found to be time barred under similar circumstances.  For example, in *Bull v. Chandler*, the court charged the plaintiff with notice of the alleged investment fraud as soon as the plaintiff made its first investment.  1992 WL 103686, at *5 (N.D. Cal. Mar. 12, 1992).  The fraud claims were based on purported misrepresentations of the risk and quality of the investments.  But "statements in the offering materials were in direct contradiction to the statements of suitability (*i.e.*, low risk and high return) allegedly made by [defendant]."  *Id.*; *see also Calvi v. Prudential Securities, Inc.*, 861 F. Supp. 69, 70–72 (C.D. Cal. 1994) (collecting cases demonstrating inquiry notice based on similar materials).

Similarly, in *Hamilton Materials*, the Ninth Circuit deemed the plaintiff to be on inquiry notice of its fraud claims near when the alleged misrepresentations were made.  494 F.3d at 1206.  The plaintiff claimed it was misled about the health hazards of asbestos when it purchased asbestos from 1965 to 1977, but it contended that the fraud claims accrued only years later when it learned of the defendants' intent to

deceive their customers regarding the health effects of asbestos.  *Id.*  The Ninth Circuit rejected this argument.  The plaintiff, "a knowledgeable and sophisticated manufacturer of asbestos products," should have known enough "to be suspicious that the position taken by" the defendants regarding health effects was potentially false.  *Id.*  Accordingly, "it [was] simply not possible that [plaintiff] was not on inquiry notice of its claim."  *Id.*

MegaFon is a sophisticated entity that negotiated a $28 million contract to rebuild "key elements" of its business.  Am. Compl. ¶ 2.  The contract expressly stated that components would be custom-designed, that the synchronization functionality had been deployed only in smaller systems in the past, and that the details of the UDR deployment needed to be resolved in subsequent workshops.  Recognizing the risks inherent in a contract of that scope and novelty, MegaFon negotiated penalty provisions, phased delivery and acceptance schedules, and ███████████████████.  As a matter of law, it was on at least inquiry notice of its alleged fraud claims by the time the contract was signed.

> **b)** **MegaFon cannot plausibly contend it lacked notice when it began complaining of the system's performance five years before filing suit.**

Even assuming *arguendo* that MegaFon did not have notice of its potential fraud claims by the time the contract was signed, MegaFon cannot plausibly contend it lacked inquiry notice of its claims when it first began to complain of problems with the system.

"A plaintiff is on inquiry notice of its fraud claims when he 'learns, or at least is put on notice, that a representation [is] false.'"  *Hamilton Materials*, 494 F.3d at 1206.  For example, in a suit alleging misleading statements related to the efficacy of a drug, the plaintiff will be on notice of her claims when she has reason to believe the drug is not effective for her.  *See Plumlee v. Pfizer, Inc.*, 2014 WL 4275519, at *7 (N.D. Cal. Aug. 29, 2014), *aff'd* 664 F. App'x 651 (9th Cir. 2016).  That belief would undermine "the claims of effectiveness Plaintiff had read, seen, and relied on" and so would cause a reasonable person to "suspect that Defendant had done something wrong."  *Id.*

So too here.  When MegaFon "had a reasonable basis to question the validity of the representations" allegedly made by HPE regarding its past experience and ability to perform, MegaFon was on notice of its claims "and therefore had an affirmative obligation . . . to file a complaint within the applicable limitations period."  *Raifman v. Wells Fargo Advisors, LLC*, 2014 WL 12013436, at *9 (N.D.

Cal. Mar. 31, 2014), *aff'd sub nom. Raifman v. Wachovia Sec., LLC*, 649 F. App'x 611 (9th Cir. 2016); *see also Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008) (concluding plaintiff was on inquiry notice of alleged safety misrepresentations as soon as it learned of recall).

MegaFon's notice arose well before October 23, 2014.  According to MegaFon, it began to complain of "a 'most critical issue'" relating to "broken records" at least by late summer of 2013—more than five years before it filed its Complaint. Am. Compl. ¶ 93; *see also id.* ¶¶ 61–62. MegaFon alleges it "demanded an action plan from HPE" by August 2013 to address its complaints of "poor performance of the solution and extremely low productivity of provisioning." *Id.* ¶ 62.  But the problems allegedly persisted such that HPE had to pay "penalties for HPE's failures to provide the contracted-for performance" six months later, in February 2014. *Id.* ¶ 63.  By October 2014, the "critical issues plaguing the UDR deployment" had become so problematic from MegaFon's perspective that it refused to accept further delivery under the contract. *Id.* ¶ 64 (alleging that MegaFon "informed HPE that it would no longer accept delivery of UDR project phases").

"The thrust of the discovery rule is that it 'does not encourage dilatory tactics.'" *Krzyzanowsky v. Orkin Exterminating Co.*, 2009 WL 481267, at *6 (N.D. Cal. Feb. 24, 2009).  If a plaintiff "reasonably suspects a wrongful injury," it "must choose whether to file suit or sit on [its] rights." *Id.*; *accord Raifman*, 649 F. App'x at 613.  MegaFon, in its own words, complained for 14 months about repeated failures to deliver a "contractual requirement," made "financial claims" related to those alleged failures, and eventually refused to accept further deliveries under the contract until the problems were fixed.  Am. Compl. ¶¶ 62–64.  Each of those allegations, if accepted as true, put MegaFon on notice that pre-contract statements regarding HPE's experience, ability to perform, and 99.999% system reliability were not accurate.  Yet it sat on its rights for more than four years.  It cannot change its mind now. *See Plumlee*, 664 F. App'x at 653 (affirming dismissal with prejudice when plaintiff was on notice that product was ineffective); *Garcia*, 2018 WL 6460196, at *6 ("Three previous visits for the exact same complaints, with the same unsuccessful repairs, would put a reasonable person on notice of a potential injury."); *Stickrath v. Globalstar, Inc.*, 2008 WL 5384760, at *6 (N.D. Cal. Dec. 22, 2008) (barring claims when plaintiff "was immediately on notice of his phone's poor functioning upon purchase" because the fact "that

[plaintiff] lacked technical knowledge of the cause of his phone's defective operation does not mean he lacked knowledge of the phone's defects").

### c) MegaFon's purported excuses for not bringing timely fraud claims do not defeat its notice of those claims.

Despite its repeated and sustained complaints of alleged deficiencies in HPE Russia's performance in 2013 and early 2014, MegaFon contends that it could not have discovered its claims until after two 2017 service outages.  *See* Am. Compl. ¶ 112.  But those outages relate, if anything, to the amount of alleged damages, not to whether MegaFon had a claim for fraudulent or negligent inducement.  Almost immediately after signing the contract, MegaFon alleges that the system did not comport with its expectations.  Additional allegations of two service outages nearly four years later do not change the fact that MegaFon had sufficient facts to be on inquiry notice of its claims when it first began to complain.  *See Davies v. Krasna*, 14 Cal. 3d 502, 514 (1975) ("[U]ncertainty as to the amount of damages" does not "toll[] the period of limitations."); *Miller v. Lakeside Village Condominium Ass'n*, 1 Cal. App. 4th 1611, 1623 (1991) ("[T]he cause of action is complete on the sustaining of 'actual and appreciable harm,' on which the recoverable damages would be more than nominal.").

MegaFon's allegation that the entire system was not fully operational until June 2016 is similarly unavailing.  *See* Am. Compl. ¶¶ 90, 102.  MegaFon's chief fraud theory is that HPE misrepresented its experience and expertise with similar solutions, leading MegaFon to believe it would receive an out-of-the-box product with 99.999% reliability.  *See supra* at 3.  MegaFon does not explain why it would be reasonable to continue to hold such a belief when allegedly critical problems with the product manifested just months after the contract was signed.  *See* Am. Compl. ¶¶ 62–64, 93.  Nor does it explain why problems with the early stages of the project would not put it on notice that incremental expansion of the project may present similar, if not greater, challenges.  Given MegaFon's own characterization of its repeated complaints related to HPE Russia's performance under the contract, it was on inquiry notice of its pre-contract fraud claims against HPE more than four years before it filed suit.

### 3. MegaFon does not allege facts showing that it exercised reasonable diligence in attempting to discover its claims.

MegaFon's claims are time barred for the additional reason that it fails to allege reasonable diligence.  As the Court explained, "MegaFon must allege facts to show that it could not have made this

discovery earlier despite reasonable diligence and must additionally show that it in fact exercised that reasonable diligence."  Order at 11.  Even if a plaintiff does not know the specific facts required to bring a cause of action, "he must indeed seek to learn the facts necessary to bring the cause of action in the first place—he cannot wait for them to find him and sit on his rights; he must go find them himself if he can and file suit if he does."  *Norgart*, 21 Cal. 4th at 397–98 (internal quotation marks omitted).

The Amended Complaint fails to meet this standard.  It does not allege, for example, that MegaFon sought additional information from HPE or its customers regarding past projects HPE had completed so that it could determine how similar those projects were to MegaFon's.  *See* Am. Compl. ¶ 38.  And while MegaFon contends it learned of HPE's lack of experience "[a]s a result of" independent consultant reports it obtained in 2017, *id.* ¶ 111, MegaFon never explains why it could not have obtained similar reports when it began noticing issues in 2013, *see id.* ¶¶ 62–64.  Failure to conduct these inquiries when it first alleges performance concerns is fatal to MegaFon's claims.  *See Krzyzanowsky*, 2009 WL 481267, at *7 ("While he may not have known in 2002 what his expert would conclude in 2009, this does not alter the fact that he reasonably suspected in 2002 that [defendant's] failure to properly provide services in 1999 through 2000 caused his 2002 [injury].");  *see also Torres v. Ford Motor Co.*, 2018 WL 2088268, at *3 (E.D. Cal. May 4, 2018) (finding claims time barred when plaintiff failed to exercise reasonable diligence after experiencing "'frequent' oil and coolant leaks, surging while driving, overheating while driving, and emission of white smoke").

### B.   MegaFon does not allege sufficient facts to invoke the doctrine of fraudulent concealment to toll the statutes of limitations.

To plead fraudulent concealment, MegaFon "must allege: (1) that HPE took affirmative acts to mislead it; (2) that MegaFon did not have actual or constructive knowledge of the facts giving rise to these claims; and (3) that it acted diligently in trying to uncover those facts."  Order at 11.  "Fraudulent concealment tolling must be pled with particularity under [Rule] 9(b)."  *Garcia*, 2018 WL 6460196, at *6. MegaFon does not satisfy these requirements.

### 1.   Fraudulent concealment does not apply because MegaFon's own allegations demonstrate it had knowledge of facts giving rise to its claims.

Courts repeatedly have made clear that California's "fraudulent concealment doctrine does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, *if a plaintiff is*

14

*on notice of a potential* claim." *Krzyzanowsky* 2009 WL 481267, at \*9 (internal quotation marks omitted); *see also Felix v. Anderson*, 2016 WL 3540980, at \*4–5 (N.D. Cal. June 29, 2016) (rejecting fraudulent concealment when defendant instructed plaintiffs "to have faith in their arrangement, that she would take care of them, that she would do right by them, that they were in good hands" because the statements came after a report put plaintiffs on notice that their property had been sold significantly below market price).

MegaFon's fraudulent concealment allegations contend that HPE misleadingly suggested it would resolve MegaFon's early complaints with the system. *See* Am. Compl. ¶¶ 91–95. But that theory necessarily implies that MegaFon already knew of the alleged performance issues. MegaFon thus had a reasonable basis to question the veracity of HPE's alleged pre-contract misrepresentations about experience and ability to perform. *See supra* at 11–12. Statements made after notice arose cannot form the basis for fraudulent concealment. *See Krzyzanowsky*, 2009 WL 481267, at \*9; *see also Platt Elec. Supply, Inc.*, 522 F.3d at 1056 (concluding plaintiff "failed to demonstrate that [defendant's] conduct concealed the facts of its alleged negligent misrepresentation, as [plaintiff] had notice of [defendant's] potential wrongdoing as early as 1999"); *Gibson v. United States*, 781 F.2d 1334, 1345 (9th Cir. 1986) (refusing to toll limitations period based on later misrepresentations that arson did not cause a fire because plaintiffs were told shortly after the fire that an incendiary device was found).

Moreover, MegaFon does not explain how assurances that HPE would fix the alleged performance issues relate to the pre-contract misrepresentation theory MegaFon pleaded. According to MegaFon, HPE misrepresented its past experience to induce MegaFon to sign the contract. None of the new concealment allegations relate to those alleged misrepresentations about experience. Statements that the system had been "improved" or "fixed" in no way concealed the amount of experience HPE had with similar systems in the past. Am. Compl. ¶ 92. Likewise, there could be no concealment of the alleged pre-contract misrepresentations based on statements that HPE expected to "provid[e] a final solution." *Id.* These statements do not alter the fact that MegaFon had reason to suspect it would not be receiving an out-of-the-box solution from HPE. Accordingly, MegaFon's claims are time barred. *See Bull*, 1992 WL 103686, at \*5 (rejecting fraudulent concealment where the alleged concealment (a broker's assurances about a timeline for returns) did not relate to alleged misrepresentations underlying the claim (about amount of return or nature of risk)).

1

2

3

4

5

6

Finally, most of MegaFon's new allegations must be disregarded because they are tethered to statements allegedly made by non-defendants HPE Russia or HPE Bulgaria, not HPE. *See, e.g.*, Am. Compl. ¶¶ 88, 91, 93, 95, 97, 101, 106, 109 (alleging statements made by HPE Russia GM Alexander Mikoyan, HPE Russia Network Delivery Lead Oleg Neyolov, and HPE Bulgaria Project Manager Ivan Petrov). MegaFon cannot, consistent with its Rule 11 obligations, contend that such statements were made by Defendant HPE.[9]

7

### 2.    MegaFon failed to act diligently in trying to uncover the facts of its claims.

8

9

For the same reasons already discussed in Section II.A.3, MegaFon did not act diligently in trying to uncover the facts of its claims and so cannot toll the statute of limitations. *See* Order at 11.

10

### C.    Dismissal with prejudice is warranted.

11

12

13

14

15

16

17

18

19

The Court gave MegaFon ample opportunity to address the flaws in its time-barred claims and set forth the applicable legal standard in detail. Even with that guidance, MegaFon could not plead a legally sufficient delayed discovery or tolling theory. No additional allegations will change the fact that MegaFon was on inquiry notice of its claims more than four years before filing this suit, so further amendment would be futile. Accordingly, dismissal with prejudice is warranted. *See Plumlee*, 664 F. App'x at 654 (affirming dismissal with prejudice because plaintiff failed to allege reasonable diligence after being put on inquiry notice of her claims); *Raifman*, 649 F. App'x at 613–14 (same); *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1019–20 (N.D. Cal. 2015) (dismissing with prejudice after court advised plaintiff of deficiencies in fraudulent concealment tolling argument and plaintiff failed to cure deficiencies).

20

21

### III.    THE NEW ALLEGATIONS IN THE AMENDED COMPLAINT CONFIRM THAT HPE RUSSIA IS A NECESSARY AND INDISPENSABLE PARTY AND THAT INTERLOCUTORY REVIEW IS WARRANTED IF THE COURT DISAGREES.

22

23

24

If the Court does not dismiss MegaFon's claims as time barred, the Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary and

25

26

27

28

[9] *See* Am. Compl. ¶ 56 (identifying Alexander Mikoyan as "the General Director of HP Russia"); ECF No. 35-3, at 5 (exhibit filed by MegaFon listing Alexander Mikoyan as the "HP Russia GM"); ECF No. 25-6, at 51 (Framework Contract signed by Alexander Mikoyan as "General Manager" of "ZAO 'Hewlett-Packard A.O.'"); ECF No. 36-3 (exhibit filed by MegaFon identifying Ivan Petrov as an employee of "Hewlett-Packard Bulgaria"); ECF No. 24-12 (sworn declaration identifying Oleg Neyolov as an employee of HPE Russia).

16

1    indispensable party—HPE Russia.  Although HPE acknowledges that the Court denied HPE's motion to

2    dismiss the original complaint under Rule 12(b)(7), HPE seeks a ruling on the necessary party issue with

3    respect to the Amended Complaint.

4           For purposes of this motion and appeal, HPE maintains and preserves all of the arguments it made

5    in the first motion to dismiss.  *See* ECF No. 25-4 ("Mot.") at 6–15; ECF No. 41 ("Reply") at 1–7.  In sum,

6    MegaFon's claims will require the Court to determine whether HPE Russia met its obligations under the

7    contract, and the Amended Complaint makes clear that the statute of limitations defense also will require

8    contractual interpretation.  The forum selection clause (to which HPE Russia and MegaFon agreed) bars

9    litigation of those questions in a U.S. court.  These two interests make HPE Russia a necessary party under

10   Rule 19(a).  No matter how vigorously HPE defends this case, HPE Russia still will be deprived of its

11   right under the forum selection clause to have a Russian court resolve disputes relating to contract

12   interpretation and performance.

13          Should the Court deny HPE's motion to dismiss the Amended Complaint under Rules 12(b)(6)

14   and 12(b)(7), HPE respectfully requests that the Court certify the issue for interlocutory appeal pursuant

15   to 28 U.S.C. section 1292(b).  A non-final order may be certified for interlocutory appeal if it (1) "involves

16   a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and

17   (3) where "an immediate appeal from the order may materially advance the ultimate termination of the

18   litigation."  28 U.S.C. § 1292(b).  The necessary party question is precisely the type of issue for which

19   interlocutory appeal was intended.

20          **A.      Whether HPE Russia is a necessary party is a controlling question of law.**

21          A question of law is controlling if "resolution of the issue on appeal could materially affect the

22   outcome of litigation in the district court."  *Deutsche Bank Nat'l Trust Co. v. F.D.I.C.*, 854 F. Supp. 2d

23   756, 768 (C.D. Cal. 2011) (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981)).

24   Resolution of the necessary party issue in HPE's favor would end the suit, saving the needless expense of

25   litigation.  Accordingly, the question is controlling.  *See Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319

26   (9th Cir. 1996) ("[A]n order may involve a controlling question of law if it could cause the needless

27   expense and delay of litigating an entire case in a forum that has no power to decide the matter."); *see also*

28

*Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1065 (D. Haw. 2013) ("Controlling questions of law include 'determination[s] of who are necessary and proper parties . . . .'").

**B.   There is substantial ground for difference of opinion as to whether HPE Russia is a necessary party.**

Section 1292(b) also requires a substantial ground for difference of opinion on the merits.  "[A] substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution."  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  The standard is met not only where "contradictory precedent" already exists but also for "novel legal issues."  *Id.*

Substantial ground for difference of opinion exists with respect to at least three issues underlying the necessary party question: (1) whether a contracting party is necessary in a tort suit that will determine rights and duties under the contract, (2) whether a forum selection clause can apply in light of general fraudulent inducement allegations, and (3) whether a parent company's interests are identical to those of its subsidiary when the subsidiary has additional rights under a forum selection clause.

**1.   There is substantial ground for difference of opinion as to whether MegaFon's tort claims will require resolution of key contractual questions.**

The Court determined that "[t]aking MegaFon's factual allegations as true," it has alleged a "tort case" rather than a "contract dispute," so contractual signatory HPE Russia is not necessary.  Order at 4.

Analogous cases within the Ninth Circuit present substantial ground for difference of opinion on whether HPE Russia is necessary even if MegaFon's claims sound in tort.  The elements of the MegaFon's claims and defenses require resolution of key contractual questions in at least three respects:

1. **Injury/Damages.**  MegaFon never has explained—and the Court's Order did not address—how MegaFon could prove damages or UCL statutory standing resulting from HPE's alleged fraudulent inducement if MegaFon received everything it bargained for under the contract.  MegaFon thus will have to prove a breach of contract by HPE Russia in order to prevail on its fraud claims against HPE.

2. **Misrepresentation.**  MegaFon has never explained how it could succeed in proving a false or misleading statement by HPE regarding ability to perform if HPE Russia did in fact perform as specified in the contract.

3. **Statute of Limitations.** MegaFon's new allegations show that the statute of limitations defense will be inextricably intertwined with key questions of HPE Russia's contractual performance and whether and when MegaFon knew of alleged deficiencies with that performance.[10]

Not only will MegaFon be required to prove HPE Russia's non-performance to succeed on its claims against HPE, HPE will defend this case by showing that MegaFon received everything it bargained for under the contract. To be clear, if this case were to proceed to trial, HPE would not defend the case merely by putting HPE U.S. witnesses on the stand to deny MegaFon's claims. It would be grossly unfair to expect HPE to defend this case in a vacuum. HPE will be entitled to show all of the background facts regarding the contract between MegaFon and HPE Russia, evidence showing the full scope of performance by HPE Russia, and documents and testimony demonstrating that any problems with the UDR system were unforeseen and/or due to problems MegaFon created. Accordingly, HPE Russia's rights, duties, and obligations under the contract will be at the center of the case, notwithstanding that it sounds in tort and is brought against HPE.

Where, as here, a suit between two parties will require a court to "look to and decide the rights and duties under" a contract with an absent third party, there is substantial ground to find that absent party to be necessary. *Fid. Nat'l Title Ins. Co. v. Terra Mktg., Inc.*, 2015 WL 12765114, at *5 (C.D. Cal. Sept. 2, 2015); *see also Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023–24 (9th Cir. 2002) (finding absent tribe to be necessary in part because determination that gaming operations were illegal would practically impair the tribe's interest in its gaming compacts); *Jamul Action Comm. v. Chauduri*, 200 F. Supp. 3d 1042, 1049 (E.D. Cal. 2016) (finding absent tribe to be necessary party when action involved claim that "gaming on the Tribe's land would violate its tribal-state compact"); *Encatto Ltd. v. Obscura Digital Inc.*, 2013 WL 394195, at *3–4 (N.D. Cal. Jan. 30, 2013) (finding plaintiff's parent corporation to be a necessary party because the case turned on analysis of the defendant's performance on an agreement with the parent corporation); Mot. at 7–8 & n.13 (collecting additional cases).

---

[10] *See, e.g.*, Am. Compl. ¶¶ 62–66, 87, 89–99, 100, 103.

## 2. There is substantial ground for difference of opinion as to whether HPE Russia's forum selection clause applies to this suit.

The Court held that the forum selection clause does not apply because this is a tort case, not a contract case.  Order at 4–5.  The Court also reasoned that "the forum selection clause cannot govern this case because this dispute . . . challenges the circumstances that gave rise to the contract's existence in the first place."  *Id.* at 5 (citing *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (en banc)).

Cases holding the opposite demonstrate substantial ground for disagreement on this question within the Ninth Circuit.  The Ninth Circuit has recognized that "forum selection clauses can be equally applicable to contractual and tort causes of action."  *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).  Contractual forum selection clauses apply to tort claims when "resolution of the claims relates to interpretation of the contract."  *Id.*  In *Manetti-Farrow*, the Ninth Circuit held that a forum selection clause applied to conspiracy, tortious interference, and unfair competition claims because each related to the rights and duties under the contract.  *Id.*  Thus, the claims "could not be adjudicated without analyzing whether the parties were in compliance with the contract."  *Id.*; *see also Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661, 662 (9th Cir. 2016) (concluding UCL, unjust enrichment, conversion, and aiding and abetting claims related to the contract because none of the claims "could go forward had the contract not existed").  So too here.  Even though MegaFon has not brought contract claims, its fraud claims cannot "be adjudicated without analyzing whether the parties were in compliance with the contract."  *Manetti-Farrow*, 858 F.2d at 514; *see also* Mot. at 7–8, Reply at 2–4; *supra* at 18–19.

The Ninth Circuit also has held that general fraudulent inducement allegations of the type MegaFon advances here do not defeat an otherwise valid forum selection clause.  *See Richards*, 135 F.3d at 1297.  "For a party to escape a forum selection clause on the grounds of fraud, it must show that 'the *inclusion of that clause in the contract* was the product of fraud or coercion.'"  *Id.* (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974) (emphasis in original)).  Accordingly, in *Richards*, the Ninth Circuit enforced the forum selection clause despite allegations that the plaintiffs had been fraudulently induced into entering the contract as a whole.  The *Richards* plaintiffs had not "allege[d] . . . that Lloyd's misled them as to the legal effect of the [forum selection] clause[].  Nor d[id] they allege that Lloyd's fraudulently inserted the clause[] without their knowledge."  *Id.*  As a result, the Ninth Circuit

20

"view[ed] the allegations [of fraud] . . . as going only to the contract as a whole, with no allegations as to the inclusion of the [forum selection] clause[] [itself]." *Id.* Pursuant to Supreme Court precedent, the Ninth Circuit therefore refused to set aside the forum selection clause. *Id.* (stating that "the Supreme Court has noted that simply alleging that one was duped into signing the contract is not enough" (citing *Scherk*, 417 U.S. at 519 n. 14)).

In contrast, the Ninth Circuit refused to enforce a forum selection clause in *Petersen v. Boeing Co.*, 715 F.3d 276, 282–83 (9th Cir. 2013). There, the plaintiff alleged fraud going to the inclusion of the clause itself: The defendant allegedly inserted the clause into the contract after the plaintiff had already signed a version with no forum selection clause, forced the plaintiff to sign the new contract without giving him time to read it, and threatened to fire and deport the plaintiff if he did not immediately sign. *Id.*

MegaFon makes no such allegations. Accordingly, there is substantial ground to believe the Ninth Circuit would find that *Scherk* and *Richards* govern.

### 3. There is substantial ground for difference of opinion as to whether a parent company's interests are the same as those of its subsidiary when the two have differing contractual rights.

Another important component of the necessary party question is whether a corporate parent presumptively can protect the interests of its absent subsidiary in pending litigation when the subsidiary is entitled to have key issues resolved in another forum. *See* Mot. at 8–11; Reply at 4–6. The Ninth Circuit has not spoken on the issue, and courts outside this circuit are divided on the question of whether parent and subsidiary interests can diverge. The First, Seventh, and Federal Circuits have assumed that a parent's interests will subsume its subsidiaries' interests, meaning that subsidiaries are rarely if ever necessary parties in suits against their parents. *See Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 361 F.3d 359, 364 (7th Cir. 2004); *Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1272 (Fed. Cir. 1998); *Pujol v. Shearson Am. Express, Inc.*, 877 F.2d 132, 135 (1st Cir. 1989). But a range of other courts, including district courts within the Ninth Circuit, have found corporate affiliates to be necessary parties. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 251 (4th Cir. 2000); *Thimbler, Inc. v. Unique Sols. Design, USA Ltd.*, 2014 WL 1663418, at *3–5 (E.D.N.C. Apr. 25, 2014); *Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256, 260–61 (N.D. Tex. 2014); *Encatto Ltd. v. Obscura Digital Inc.*, 2013 WL 394195, at *3–4 (N.D. Cal. Jan. 30, 2013); *In re Toyota Motor*

*Corp.*, 785 F. Supp. 2d 883, 904 (C.D. Cal. 2011); *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1521 (D. Minn. 1996).

This case offers a good example of when a parent company cannot fully protect its subsidiary's interests. No matter how HPE fares on the merits of the alleged fraud claims, litigating in California will violate HPE Russia's right to have disputes about its contract resolved in Russia. *See* Mot. at 8–11; Reply at 4–6. In other words, HPE Russia's forum-selection clause rights are violated simply by the suit proceeding, regardless of the vigor with which HPE defends the suit. HPE cannot protect HPE Russia's interests in this respect because it has no ability to unilaterally limit discovery requests or avoid litigation of HPE Russia's contractual performance, especially when that issue must be proven as an element of MegaFon's claims. These facts, together with the lack of conclusive Ninth Circuit authority and out-of-circuit split, create a substantial ground for difference of opinion on whether a parent can be presumed to adequately represent its subsidiary's interest under these circumstances. *See Wilton Miwok Rancheria v. Salazar*, 2010 WL 693420, at *12 (N.D. Cal. Feb. 23, 2010) (finding substantial ground for difference of opinion where Ninth Circuit had not ruled on issue and out-of-circuit split existed).

### C.     An immediate appeal will materially advance the termination of this litigation.

"Certification 'materially advances the ultimate termination of the litigation' when 'allowing an interlocutory appeal would avoid protracted and expensive litigation,' saving both the court and the parties 'unnecessary trouble and expense.'" *Cooper v. Tokyo Electric Power Co.*, 166 F. Supp. 3d 1103, 1142–43 (S.D. Cal. 2015) (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026).

Because a finding for HPE on appeal would result in dismissal of the case, the third element of section 1292(b) is satisfied. If litigation proceeds, the parties must litigate the truth or falsity of statements made more than six years ago, involving a highly complex technical system implemented nearly 6,000 miles away. Key witnesses have left in the ensuing years, and there is no practical way to compel discovery from them, let alone to present their testimony at trial in California. *See* ECF No. 26, at 6–8 (discussing lack of civil discovery in Russia and Russia's general refusal to honor letters rogatory). Indeed, it will be a challenge to present testimony even from current employees of HPE Russia or

22

MegaFon given the visa requirements and long delays (300 days on average) for visa interviews.[11]  In addition, the translation needs and location of documents and physical evidence in Russia will make discovery unusually expensive and time consuming.  These concerns highlight the importance of interlocutory review for the potentially case-dispositive necessary party argument.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7).


Dated: April 9, 2019                                    Respectfully submitted,

                                                        /s/ *Kathryn E. Cahoy*

                                                        Clara J. Shin (Bar No. 214809)
                                                        COVINGTON & BURLING LLP
                                                        One Front Street, 35th Floor
                                                        San Francisco, CA 94111-5356
                                                        Telephone: (415) 591-6000
                                                        Facsimile: (415) 591-6091
                                                        E-mail: cshin@cov.com

                                                        John E. Hall (Bar No. 118877)
                                                        COVINGTON & BURLING LLP
                                                        One CityCenter
                                                        850 Tenth Street, N.W.
                                                        Washington, DC 20001-4956
                                                        Telephone: (202) 662-6000
                                                        Facsimile: (202) 662-6291
                                                        E-mail: jhall@cov.com

                                                        Kurt G. Calia (Bar No. 214300)
                                                        Kathryn E. Cahoy (Bar No. 298777)
                                                        COVINGTON & BURLING LLP
                                                        3000 El Camino Real
                                                        5 Palo Alto Square, 10th Floor
                                                        Palo Alto, CA 94306-2112
                                                        Telephone: (650) 632-4700

---

[11]    *See* U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html (last visited Apr. 8, 2019) (explaining that Russian citizens visiting the United States for business must obtain a B-1 visitor visa and listing the average wait time for the required visa interview in Moscow as 300 days).

Facsimile: (650) 632-4717
E-mail: kcalia@cov.com
E-mail: kcahoy@cov.com

*Counsel for Defendant*
*Hewlett Packard Enterprise Co.*