United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAFON PJSC,<br>　　　　Plaintiff,<br>　　v.<br>HEWLETT PACKARD ENTERPRISE COMPANY,<br>　　　　Defendant. | Case No. 18-cv-06463-NC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Re: Dkt. No. 53 |

In a case arising from a telecom project in Russia, defendant Hewlett Packard Enterprise moves to dismiss plaintiff MegaFon's amended complaint as time-barred. Dkt. Nos. 52, 53. HPE also moves to dismiss under Rule 12(b)(7) for failure to join HPE's Russian subsidiary, HP Russia, and requests certification of this issue for interlocutory appeal under 28 U.S.C. § 1292(b). Because MegaFon has plausibly alleged that it could not have discovered the basis of its fraud claims until well within the statutory period, the motion to dismiss is DENIED. The Court previously denied HPE's motion to dismiss for failure to join HPE Russia, and HPE's motion for reconsideration of that issue is DENIED. Finally, finding that HPE has not shown exceptional circumstances warranting interlocutory review, that request is also DENIED.

## I. Background

### A. Procedural Background

MegaFon filed its complaint against HPE on October 23, 2018, for fraudulent

inducement, negligent misrepresentation, and unfair competition. Dkt. No. 1. MegaFon moved to dismiss for failure to state a claim under Rules 12(b)(6) and 9(b), including failure to state actionable claims due to time bars under relevant statutes of limitation, and for failure to join a necessary and indispensable party under Rules 12(b)(7) and 19(a)–(b). The Court held a hearing on the motion. Dkt. No. 43. The Court granted the motion in part and denied it in part, finding that MegaFon had sufficiently stated its claims and that HP Russia was not a necessary party, but holding that the claims as pled were time-barred. Dkt. No. 50. The Court granted MegaFon leave to amend to plead that its claims were timely. *Id*. MegaFon filed an amended complaint with the same factual allegations as its first, plus an additional six pages of facts going toward the question of timeliness. Dkt. No. 52. HPE again moved to dismiss, both under applicable statutes of limitation and again for failure to add a necessary and indispensable party under Rule 12(b)(7). Dkt. No. 53. In the event that the Court does not rule in its favor on the 12(b)(7) question, HPE requested certification of the issue for interlocutory appeal. *Id*.

Both parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 12, 16.

### B. Facts Alleged in the Amended Complaint

The following facts are alleged in MegaFon's amended complaint and were also already alleged in its original complaint. Dkt. Nos. 1, 52. In deciding this motion, the Court accepts these allegations as true and construes them in the light most favorable to MegaFon. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

MegaFon is one of the largest telecom operators in Russia. Dkt. No. 52 at ¶ 7. MegaFon decided in 2011 that it needed to upgrade its mobile phone network to accommodate LTE communications. *Id.* at ¶ 2. It circulated a Request For Information containing its express goals for this upgrade. *Id*. HPE responded to the RFI. *Id*. at ¶¶ 8, 16. After extensive negotiations throughout 2012 including representations by HPE that it could provide for all of MegaFon's needs, the companies entered a contract in 2013. *Id*. at ¶ 18–53. This contract was between MegaFon and HPE Russia (at the time called "ZAO

2

1   HP"), HPE's Russian subsidiary. Dkt. No. 24 at 1.

2   The upgraded system performed poorly, contained defects, and was fundamentally
incapable of meeting MegaFon's requirements. Dkt. No. 52 at ¶ 58–67. MegaFon paid
$28 million for the failed upgrade, will have to spend up to another $28 million for a new
upgrade, and suffered costs in diagnosing and mitigating the dysfunctional system while its
reputation was harmed. *Id.* at ¶¶ 113, 114.

MegaFon added the following facts to its amended complaint. Dkt. No. 52. While
implementation issues arose as early as 2013, the system built by HPE was not fully
deployed until 2016. *Id.* at ¶¶ 87, 90. Though MegaFon flagged multiple problems with
the system in 2013, HPE assured MegaFon that these issues were transitory and were
related to the migration of MegaFon's existing system to the new one. *Id.* at ¶ 87, 94. The
transition involved serial replacement of hardware and software over two years. *Id.* at ¶
89. HPE repeatedly represented that it had fixed or was close to fixing every problem that
arose during that time. *Id.* at ¶¶ 93, 95. HPE proposed a so-called "interim solution,"
indicating that once the migration was completed the issues would resolve. *Id.* at ¶ 95. A
formal plan to that effect, delivered by HPE in late 2015, identified an August or
September 2016 date by which a final release would be a permanent fix. *Id.* at ¶ 99. By
late 2016, the migration was complete but technical deficiencies remained. *Id.* at ¶¶ 102,
105. In April and May 2017, "catastrophic failures" that caused widespread system
outages occurred. *Id.* at ¶ 108. In June 2017, HPE concluded that the only permanent fix
would be a "do-over." *Id.* at ¶ 110.

## II.   Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal
sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a
motion to dismiss, all allegations of material fact are taken as true and construed in the
light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–
38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are
merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re*

3

*Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a claim is not sufficiently pled, the Court should grant leave to amend unless it "determines that the pleading could not possibly be cured by allegations of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**III. Discussion**

**A. MegaFon has Sufficiently Alleged that Its Claims Are Not Time Barred**

Fraud and negligent misrepresentation claims are subject to three-year statutes of limitations and unfair competition claims to a four-year statute of limitations. Cal. Code Civ. Proc. §338(d); Cal. Bus. & Prof. Code § 17208; *Villegas v. Wells Fargo Bank, N.A.*, 2012 WL 4097747, No. 12-cv-2004-LB, at *4 (N.D. Cal. Sept. 17, 2012) (granting a motion to dismiss under Cal. Code Civ. Proc. §338(d) and Cal. Bus. & Prof. Code § 17208 where plaintiff filed a complaint more than four years after the events giving rise to the suit). This timing accrues from the date that the plaintiff discovers, or should have discovered, the fraud. *Aiello v. BAC Home Loans Servicing, LP*, 2011 WL 13266352, No. 11-cv-3655-RS, at *4 (N.D. Cal. Sept. 30, 2011). When the statute of limitations is at issue, the plaintiff must allege "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1131–32 (N.D. Cal. 2009). The burden is on the plaintiff to show that it exercised this diligence. *Rhynes v. Stryker Corp.*, 2011 WL 2149095, No. 10-cv-5619-SC, at *2 (N.D. Cal. May 31, 2011). The plaintiff must "affirmatively excuse his failure to discover the fraud within [the statutory period] by showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Clemens v. DaimerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008).

4

To plead fraudulent concealment, a plaintiff must allege: (1) that the defendant took affirmative acts to mislead it; (2) that it did not have actual or constructive knowledge of the facts giving rise to these claims; and (3) that it acted diligently in trying to uncover those facts. *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 276 (9th Cir. 1988).

In its order dismissing MegaFon's first complaint, this Court found that the fraudulent misrepresentations alleged occurred more than five years before this case was filed. Dkt. No. 50 at 10. Because many events giving rise to MegaFon's claims occurred outside the statutes of limitation for both fraud and unfair competition, this Court held that under the discovery rule "MegaFon must plead that it did not and could not have discovered the claims within the limitations period." *Id.*; *see Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 894 (N.D. Cal. 2013). In particular, this Court instructed MegaFon that it had not been "clear enough about (1) how and when the alleged fraud was discovered, or (2) why it could not have been discovered earlier despite reasonable diligence." Dkt. No. 50 at 11. Further, the Court struggled to determine whether MegaFon intended to plead fraudulent concealment and found that, if so, MegaFon had insufficiently alleged its elements. *Id*.

**1. The Discovery Rule Delayed the Accrual of Time Until 2017**

HPE argues that MegaFon failed again to plead sufficient facts as to the who, when, and how behind its discovery of the alleged fraud. Dkt. No. 53 at 8. The Court finds that MegaFon's amended complaint is now sufficient on these facts. MegaFon alleges additional facts about its communications with HPE throughout 2013–2017 about the technical issues with the system, including details of particular conversations with named HPE representatives on specific dates about the ultimate system failure. Dkt. No. 52 at ¶¶ 108–110 (alleging that HPE's CEO Antonio Neri diagnosed the failures as caused by "an overload of a subset of solid state driver supporting the subscriber records" on May 19, 2017; that HPE's Oleg Neyolov "insisted that HPE 'had already provided a plan'" on May 18, 2017; and that a meeting took place where HPE proposed a "do-over" on June 20,

5

2017). MegaFon also adds that it hired two consulting firms to assess the causes of the crashes, and those firms' reports were completed in July and August 2017. *Id*. at ¶ 111. This is enough detail to explain how MegaFon's discovery of the alleged fraud happened in the first place in order to "give defendants notice of the particular misconduct" alleged under Rule 9(b). *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

HPE's next, and best, argument that the discovery rule did not delay the accrual of MegaFon's claims is that MegaFon was on notice of the alleged fraud from very early in the companies' relationship. Dkt. No. 53 at 9. HPE points out that it disclosed early on that its previous experience creating similar systems only included smaller versions of what MegaFon required. *See* Dkt. No. 25, Ex. 8 at §§ 3.3.; Dkt. No. 25, Ex. 10 at 1. Most significantly, MegaFon recounts repeated incidents starting as early as 2013 where it complained to HPE about performance problems. *See, e.g.,* Dkt. No. 52 at ¶¶ 62, 90, 91, 91. The issues even rose to the level of MegaFon making financial claims for payment of contractual penalties in February 2014. *Id*. at ¶ 63.

MegaFon's early awareness of technical issues with the system would be enough to put it on notice of the possible existence of its alleged fraud claims if the technical issues formed the basis of its complaint. But MegaFon's complaint identifies HPE's fraud as misrepresenting its ability "to deliver the UDR system it had represented it could deliver." Dkt. No. 52 at ¶ 112. And MegaFon could not know that HPE was "unable to deliver" the system until the system itself failed. *Id*. According to the complaint, that failure—the widespread system outages that could only be resolved by a complete "do-over"—did not occur until 2017. *Id*. at ¶¶ 108, 110. By forming its claims around the "catastrophic failures" of early 2017, MegaFon has adequately pled that it could not have known about those failures before they happened. *Id*. at ¶ 108.

### 2. MegaFon Sufficiently Pleads Fraudulent Concealment

A claim for fraudulent concealment must allege that the defendant took affirmative acts to mislead the plaintiff, that the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claims, and that the plaintiff acted diligently in trying to

6

uncover those facts. *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 276 (9th Cir. 1988). The Court was previously unsure whether MegaFon intended to allege that HPE had fraudulently concealed its inability to deliver the agreed-upon system. Dkt. No. 50 at 11. MegaFon now affirmatively argues a fraudulent concealment theory. Dkt. No. 56 at 7.

The complaint alleges that HPE affirmatively misled MegaFon by misrepresenting both its own ability to deliver the system and by misrepresenting the severity of the technical issues as they arose. Specifically, MegaFon alleges that HPE touted its "extensive experience in successful implementation of similar project[s] globally" and repeatedly told MegaFon that the system's problems were temporary. Dkt. No. 52 at ¶¶ 56, 88, 62, 90–92. MegaFon alleges that HPE representatives communicated that the problems were only related to the migration stage, and that the underlying systems "work[ed] normally," that the failures were "caused by external factors," and that there were "no performance problems." *Id*. at ¶¶ 93, 95, 97. HPE also provided monthly reports which MegaFon alleges "announced that the HPE system was working fine." *Id*. at ¶¶ 103, 105. This exaggeration of its own expertise and concealing of the true source of the failures constitute affirmative misleading on the part of HPE.

Next, the complaint alleges that MegaFon did not have actual or constructive knowledge of this fraud. As discussed in Section 1 above, the Court finds that MegaFon has sufficiently pled that it could not have discovered the fraud until the widespread system outages occurred in 2017.

Finally, MegaFon has plausibly alleged that it diligently investigated its claims. It did so by repeatedly questioning HPE about the technical failures, demanding an action plan, signing an additional agreement with a protocol of solutions, and hiring outside consultants to assess the root cause of the outages. *Id*. at ¶¶ 98–101, 111. These facts allege diligent efforts to uncover the facts underlying MegaFon's claims.

The Court finds that MegaFon has pled facts to allege that the time under the statutes of limitation were tolled until the 2017 outages, and therefore its claims did not

7

begin to accrue until that time.  MegaFon has also alleged that HPE fraudulently concealed its misrepresentations through that time.  Therefore, the claims in the amended complaint are not time-barred.

**B.     Reconsideration of Failure to Join Under Rules 19(a) and 12(b)(7)**

Rule 19(a) provides that a party is "necessary" to an action if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  Rule 12(b)(7) authorizes dismissal of an action that fails to join a party whose presence is necessary for adjudication under Rule 19.

HPE already moved to dismiss MegaFon's original complaint for failure to join HPE Russia, which it argued was a necessary and indispensable party.  The Court found that HPE Russia's interest would not be impaired or impeded by these parties disposing of this action in its absence because its interests would be adequately represented by HPE.  Dkt. No. 50 at 5–6.   This Court held that "HPE Russia is not necessary under Rule 19(a)," and, as such, it did not "analyze the feasibility of joinder or the indispensability of HPE Russia under Rule 19(b)."  *Id*. at 6.

HPE moves to dismiss on this basis again, arguing that "the new allegations in the amended complaint confirm that HPE Russia is a necessary and indispensable party." Dkt. No. 53 at 16.  But HPE points to no new facts in the amended complaint to show this; the alleged facts it cites are all from the original complaint.  *Id*. at 8–13.  HPE repeats, in its motion to dismiss, previous arguments already rejected by this Court rather than filing a motion for reconsideration under Civil Local Rule 7-9.  That rule prohibits repetition of argument.  Civ. L-R. 7-9(c).  HPE's argument is largely repetitive here.  Because HPE should have properly filed a motion for reconsideration of this issue, the Court treats its motion to dismiss under Rule 12(b)(7) as such a motion, and the motion for

8

1 reconsideration is DENIED.

## C. HPE Has Not Shown the Circumstances Warrant Interlocutory Appeal

Finally, HPE requests that this Court certify the 12(b)(7) issue for interlocutory appeal. Dkt. No. 53 at 16–22. This Court should only do so if HPE shows that its order "(1) involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If a party establishes all three of those elements, the Court has discretion over whether to grant certification. *Kaltwasser v. AT&T Mobility, LLC,* 2011 WL 5417085, No. 07-cv-0422-JW at *1 (N.D. Cal. Nov. 8, 2011). The Ninth Circuit "has long recognized the congressional directive that section 1292(b) is to be applied sparingly and only in exceptional cases." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1981).

HPE has not shown any "exceptional circumstances" to justify interlocutory review. *Nanavati v. Adecoo USA*, 2015 WL 4035072, No. 14-cv-4145-BLF, at *1 (N.D. Cal. June 30, 2015) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978). This Court's previous order is particularly inappropriate for interlocutory appeal because it only ruled on whether HPE Russia was a necessary party and did not address whether it was indispensable. Dkt. No. 50 at 6. Without a ruling to review on the question of indispensability, a reversal of this Court's order on appeal would not actually hold that the case could not proceed without HPE Russia. Fed. R. Civ. P. 19; *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999). The Court is not persuaded that an immediate appeal will materially advance the ultimate termination of this litigation.

## IV. Conclusion

Because MegaFon has adequately alleged in the amended complaint that its claims are timely, the motion to dismiss is DENIED. The motion for reconsideration of the Court's previous denial of HPE's motion to dismiss for failure to join a necessary and indispensable party is also DENIED. The request for certification for interlocutory appeal is also DENIED. HPE must answer the amended complaint within 14 days.

9

**IT IS SO ORDERED.**

Dated: June 10, 2019

_____
NATHANAEL M. COUSINS
United States Magistrate Judge