W. Gordon Dobie (*pro hac vice*)
wdobie@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
Telephone:    (312) 558-5600
Facsimile:    (312) 58-5700

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
Dana L. Cook-Milligan (SBN: 301340)
dlcook@winston.com
WINSTON & STRAWN LLP
101 California Street, 34th Floor
San Francisco, CA  94111-5840
Telephone:    (415) 591-1000
Facsimile:    (415) 591-1400

*Attorneys for Plaintiff MEGAFON PJSC*

Clara J. Shin (Bar No. 214809)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
E-mail: cshin@cov.com

John E. Hall (Bar No. 118877)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
E-mail: jhall@cov.com

Kurt G. Calia (Bar No. 214300)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4717
E-mail: kcalia@cov.com
E-mail: kcahoy@cov.com

*Counsel for Defendant
Hewlett Packard Enterprise Co.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MEGAFON PJSC, a Russian corporation<br><br>Plaintiff,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation,<br><br>Defendant. | **Case No.  5:18-cv-06463-NC**<br><br>**JOINT STATUS REPORT FURTHER TO NOVEMBER 27, 2019 DISCOVERY HEARING** |

Plaintiff MegaFon PJSC ("Plaintiff" or "MegaFon") and Defendant Hewlett Packard Enterprise, Company ("Defendant" or "HPE") (collectively, the "Parties") submit this Joint Status Report pursuant to the Court's request at the November 27, 2019 discovery hearing.

**1.      Protective Order**

The Parties have been unable to resolve their dispute regarding the Protective Order, as articulated in the letter briefs recently filed. *See* Dkts. 82, 84. The Parties' positions are summarized below:

A.      MegaFon's Position

Since the November 27, 2019 hearing, HPE provided MegaFon with five example documents of what HPE believes require an amendment to the protective order entered by this court. The parties met and conferred regarding those five example documents. Neither HPE's examples nor the meet and confer revealed any information distinguishing this dispute from the one resolved in August. HPE's arguments about the competitive sensitivity are still overstated, as the financial information is old and any business strategy or technical information revealed is high level or overview. And while HPE has still not provided MegaFon with the exact number of documents withheld, MegaFon now believes HPE is either currently withholding or plans to withhold thousands of documents, based on HPE representation that they want approximately 20 percent of their intended productions to have an Outside Counsel Only designation (HPE has produced approximately 13,000 documents to date for only the first set of custodians). This only further indicates that HPE is over-designating documents for confidentiality and that no extraordinary protection is warranted.

As already articulated to the Court, HPE is withholding an unidentified number of "competitively sensitive" responsive documents, despite the robust two-tier Protective Order already on file in this action. Between first learning of the withheld documents and the date of this filing, MegaFon has provided HPE with numerous opportunities to distinguish the withheld documents from HPE's request in August, and HPE provided none. In August, this Court reviewed the same requests for production (*see* Dkt. 71-2, MegaFon's First Set of RFPs) and determined that the two tiers of protection in the Northern District's model protective order, "Confidential" and "Highly Confidential," were appropriate. That order protects as "Highly Confidential" documents with

"extremely sensitive" information, "disclosure of which . . . would create a substantial risk of serious harm that could not be avoided by less restrictive means." Dkt. 79, at § 2.9.  This is consistent with this Circuit's "strong presumption in favor of access." *San Jose Mercury News, Inc. v. United States Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999).

HPE has argued that the withheld documents need extraordinary protection because they contain sensitive financial information, competitively sensitive information, and technical information that warrants an "Outside Counsel Only" designation.  But HPE has not met its burden for such extraordinary protection.  *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (the party seeking protection bears the burden of showing that protection is warranted).  After the November 27, 2019 hearing, HPE provided MegaFon with five documents it deemed illustrative examples of withheld documents that contain competitively sensitive information.  However, those sample documents, by HPE's own admission, contain mere overviews of other customers' system structures and do not contain the highly competitive sensitive information about which Defendant now complains.  Moreover, the financial figures included the documents are not current, generally dating back to 2016 and 2017, and they are not detailed enough to warrant extraordinary protection.  Further, MegaFon is not a competitor of HPE and HPE has not articulated any competitive advantage MegaFon stands to gain.  HPE's speculation requires assuming that MegaFon's designated technical specialists will knowingly violate the Protective Order to share HPE's information with an HPE competitor who might in some way use this dated information to its advantage.  This comes far from meeting HPE's burden to justify further restrictions on MegaFon' access to discoverable information.

Despite MegaFon's good faith effort to consider HPE's position regarding the withheld documents, MegaFon disagrees that the documents require any special protection beyond what is already provided in the Protective Order.  The Protective Order entered by this Court after the August hearing was based on the same arguments HPE raises here, and that Protective Order should remain in place.  The Protective Order is intended to protect "<u>trade secrets</u>, confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted." Dkt. 79, Protective Order 1:2-4 (emphasis added).  HPE has not met its burden to show that the protections this District recommends and this Court

ordered are insufficient. HPE should be ordered to produce these responsive documents with appropriate designations immediately.

B. HPE's Position

MegaFon unilaterally filed a discovery brief on this issue on November 22, Dkt. 82, without first meeting and conferring with HPE. HPE filed its brief on November 25, Dkt. 84, and during the conference that occurred at the November 27 discovery hearing, HPE shared a proposed revision to the Protective Order with MegaFon in the hopes of resolving this dispute. After that conference and HPE's explanation of what it proposed, the Court ordered the Parties continue to negotiate; to aid that discussion, HPE offered to provide MegaFon outside counsel with examples of the type of documents over which HPE seeks additional protection. Nov. 27, 2019 Transcript 4:6-11, 6:4-22.

HPE provided five exemplar documents to MegaFon outside counsel on December 3. Those documents contain references to the UDR project, but the majority of their content concerns information that is by any objective measure a trade secret and/or sensitive commercial information—such as information concerning financial margins and financial forecasting for unrelated projects for HPE customers (nonparties to this litigation); internal analysis of HPE's competitive advantage on recent projects unrelated to this litigation (non-UDR and non-MegaFon); technical details of HPE customers' systems architecture for unrelated projects; the total contract value and other financial data for unrelated deals signed between HPE and third parties; and internal business strategy outlines, including profit margins, among other things.[1] HPE did not "admit" that these documents contain only an overview of this sensitive information—to the contrary, during the meet-and-confer, HPE explained why this detailed information is so sensitive.

At the Parties' December 5 meet-and-confer, MegaFon refused to consider HPE's proposed changes to the Protective Order and expressed no interest in proposing any alternative language. Rather, after reviewing the five exemplars HPE provided, MegaFon maintains that HPE's financial forecasting data, financial details and profit margins for HPE's contracts with third parties, and the

---

[1] HPE requests permission to (1) submit to the Court its proposed modifications to the Protective Order and (2) provide the Court for *in camera* review the exemplar competitively sensitive documents shown to MegaFon outside counsel earlier this week.

technical details of other HPE customers' systems are neither competitively sensitive nor trade secrets. During the meet-and-confer, counsel for MegaFon provided no explanation why the above-described information is not deserving of additional protection beyond stating that it may not be current and that the UDR project has ended.

MegaFon is wrong.  This information plainly constitutes trade secret and competitively sensitive material. 18 U.S.C. § 1839(3) ("trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information, including . . . plans, compilations, . . . designs, . . . methods, techniques, processes, [or] procedures"); *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569-70 (9th Cir. 2008) (finding "pricing terms, royalty rates, and guaranteed minimum payment terms" "plainly fall[] within the definition of 'trade secrets,'" holding district court abused its discretion in denying motion to seal, and granting mandamus petition); *see also United States v. Chung*, 659 F.3d 815, 827 (9th Cir. 2011).  Even the cases that MegaFon cites recognize that "trade secrets" and "financial information" meet the burden for protection under Rule 26(c). *Foltz*, 331 F.3d at 1131 & n.4.

Disclosure of this information to MegaFon employees, who are currently working with HPE's competitor to implement competing technology, could cause substantial harm to both HPE and nonparty HPE customers, many of whom are MegaFon competitors.  MegaFon's argument to the contrary—that the information is outdated because the UDR system at issue in this case reached end-of-life—is unavailing.  The sensitive material in these documents is about other systems owned by other HPE customers, some of whom are MegaFon's direct competitors.  That information does not lose it status as commercially sensitive or trade secret simply because HPE's contractual relationship with MegaFon has ended.  Moreover, this information does not relate to outdated, legacy systems—it is far more recent than that and pertains to currently deployed third-party systems.  The UDR system that is the subject of this litigation spanned, from contract execution through the project end of life, spring 2013 until the summer of 2019, and even MegaFon would not likely dispute that the financial and technical details of that system were commercially sensitive during that time frame.  It is thus disingenuous for MegaFon to suggest that similar categories of information for other HPE customers dating back for a far shorter time are somehow not competitively sensitive, as it baldly declares.

As this Court suggested in August, HPE now seeks to add a tier of information to the Protective Order that would prohibit MegaFon in-house technicians from reviewing these documents. Aug. 28, 2019 Teleconference Tr. 18:22-19:10. HPE's proposal would bring the Protective Order in line with this Court's Model Order. Contrary to MegaFon's assertion, the existing Protective Order is weaker than the Model Order, because the Protective Order allows MegaFon in-house technical specialists to review "Highly Confidential" material. *Compare* Model Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information, and/or Trade Secrets ¶¶ 2.7, 2.8, 7.3 (restricting "Attorneys' Eyes Only" information to an Expert who "is not a past or current employee of a Party or of a Party's competitor") *with* Dkt. 79 at ¶¶ 2.5, 7.2(c). And MegaFon is simply wrong in suggesting that this issue was already decided by the Court—to the contrary, the Court made clear that if MegaFon sought sensitive commercial information (which in late August it represented it was not doing, Aug. 28. 2019 Teleconference Tr. at 20:16) that the parties could confer and return to the Court to seek added protections as appropriate.[2] *Id.* at 19:6-9.

It is "unreasonable to expect that anyone working to further his own scientific and technological interests would be able assuredly to avoid even the subconscious use of the confidential information." *TVIIM, LLC v. McAfee, Inc.*, 2014 WL 2768641 at *2 (N.D. Cal. June 18, 2014). Importantly, if MegaFon in-house technical experts in Russia violate the terms of the existing Protective Order, HPE and the third parties whose information is contained in these documents would be without recourse; MegaFon's in-house employees reside in Russia and are beyond the reach of this Court.

MegaFon's continued intransigence on this issue and demand that its in-house employees be allowed to see competitively sensitive material raises concerns about MegaFon's motives in seeking these documents. Those concerns were only heightened when MegaFon's counsel was unable to articulate a single reason that in-house technical personnel would have a legitimate need to review HPE's financial information, competitive analyses, planning documents, or customer information that

---

[2] While MegaFon notes that the existing Protective Order guards against the public disclosure of trade secrets and commercially sensitive information, it does not protect against the disclosure of such information to MegaFon's in-house personnel, which is why the requested protections are indeed necessary.

was shared. *See La. Pac. Corp. v. Money Market 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 490-91 (N.D. Cal. 2012) (upholding attorneys'-eyes-only confidentiality designation for "internal accounting deliberations; account statements and other documents showing [the plaintiff's] financial picture and investment strategy" because, in part, the defendant failed to explain in detail why its in-house business employees needed access to the documents).

Despite MegaFon's inability to explain why its in-house employees—as opposed to an outside expert, consistent with the Model Protective Order—need to review these documents, HPE has repeatedly offered that if MegaFon's outside counsel determines that individual documents need to be reviewed by MegaFon in-house technical specialists, HPE would be willing to discuss redacting documents on a document-by-document basis. HPE's proposed Protective Order also retains language from the existing order to allow Parties to challenge the confidentiality designations of individual documents. MegaFon rejected this compromise as well, though it failed to explain why this system would be insufficient for the purposes of this litigation.

**2.    ADR**

The Parties are open to mediation in the upcoming months and are currently discussing the selection of an appropriate mediator.

**3.    Special Discovery Master**

A.    MegaFon's Position

MegaFon does not believe that a special discovery master is necessary at this time. MegaFon does not believe that the Parties are at an impasse with respect to the discovery disputes HPE highlights below, and MegaFon believes that the Parties will be able to resolve these disputes without judicial intervention.

B.    HPE's Position

HPE believes the appointment of a Special Master is desirable and appropriate in light of the Court's comments about its busy docket at the November 27 hearing, particularly if the Parties hope to adhere to the existing schedule in this case. HPE anticipates a number of discovery disputes will arise in the coming weeks: on the protective order referenced above, the issue of HPE apex custodians referenced below, as well as on MegaFon's deficient interrogatory responses, deficient Rule 26(a)

damage disclosures, and the status of its document production. Although the Parties met and conferred on all these issues (with the exception of apex custodians), they remain at an impasse, and so it seems clear that judicial intervention will be necessary. Moreover, MegaFon has unilaterally filed two letter briefs on discovery disputes, in violation of the Court's Standing Order. HPE therefore has every reason to suspect discovery in this case will remain contentious, and the involvement of a Special Master would promote the efficient resolution of disputes while preserving judicial resources. Indeed, MegaFon argues, inconsistently, that a discovery master is not needed even as it claims (inaccurately) that the resolution of the custodian dispute, described below, has stalled.[3] This dispute illustrates why a Special Master would be prudent.

HPE requests that the Parties be directed to confer and identify an appropriate Special Master. If the parties are unable to agree on an appropriate candidate by December 18, HPE asks that the Parties submit their respective candidates to the Court by that date.

### 4. HPE Custodians

#### A. MegaFon's Position

Pursuant to the Court's instruction, MegaFon identifies the following four witnesses to be added to HPE's custodian list: (1) Ivan Petrov; (2) Oleg Neyolov; (3) Ken Marchant; and (4) Konstantin Pavlov.

In addition, pursuant to the Court's suggestion that MegaFon propose a narrowed scope for production of Ms. Whitman's and Mr. Neri's documents (*see* 11/27/2019 Hg. Tr. 21:11-24), MegaFon proposes the following, which should inform HPE's collection of the relevant documents, reduce burden, and provide MegaFon with the documents it seeks. As the meet and confer process regarding HPE's custodian list has continued for months and repeatedly stalled, MegaFon requests that the Court enter an order with the below scope for Ms. Whitman and Mr. Neri:

- Documents or correspondence used to inform, prepare, or brief Meg Whitman and/or Antonio Neri on the UDR system failures in April, May, and June 2017, as referenced in this litigation,

---

[3] HPE notes that the Court only directed the parties to confer about the scope of the apex custodian documents on November 27; that discussion has not continued for months as MegaFon incorrectly claims.

including, but not limited to, any notes, minutes, agendas, presentations, emails, reports, or any other written or electronic communications.

- Documents or correspondence used to inform, prepare, or brief Meg Whitman relating to her May 22, 2017 email to MegaFon employees regarding the UDR system failures, and any other 2017 emails or calls between Ms. Whitman and MegaFon's Sergey Soldatenkov or other MegaFon employees, including, but not limited to, any notes, minutes, agendas, presentations, emails, reports, or any other written or electronic communications.

- Documents or correspondence used to inform, prepare, or brief Antonio Neri relating to the May 20, 2017 call between Mr. Neri and MegaFon employees, the June 2017 emails between Mr. Neri and MegaFon employees following the June 14, 2017 UDR system blackout, and any other 2017 emails, letters, or calls between Mr. Neri and MegaFon employees, including, but not limited to, any notes, minutes, agendas, presentations, emails, reports, or any other written or electronic communications.

B.   HPE's Position

Despite the Court's instruction to meet and confer on these issues before submitting a joint statement, MegaFon was unprepared to discuss additional HPE custodians on December 5 (it did not identify the scope of apex custodian documentation it sought nor identify the non-HPE custodians it sought). Rather, MegaFon provided this proposal for HPE's review only when it sent this draft status report this morning. Accordingly, while it appears MegaFon's proposal on document requests from Antonio Neri and Meg Whitman is overly broad given the Court's instruction to narrow the requests to a "particular event" and "date," Nov. 27, 2019 Transcript 21:15-16, HPE needs time to confer with its client on an appropriate response. MegaFon again seeks to circumvent the meet-and-confer process, as it now asks the Court to enter an order defining the scope for the production of apex custodian documents *even though* MegaFon first provided its proposal earlier today in the form of this draft Joint Statement and made no effort whatsoever to discuss it with HPE beforehand, as the Court directed. MegaFon's attempt to sidestep the meet-and-confer process should be denied; indeed, MegaFon's tactics have afforded HPE's counsel with no opportunity to confer with their client on this important issue.

HPE acknowledges receipt of MegaFon's request to add Ivan Petrov, Oleg Neyolov, Ken Marchant, and Konstantin Pavlov as custodians, and will begin to collect their documents.

| | | |
|---|---|---|
| 1 | Dated:  December 6, 2019 | WINSTON & STRAWN LLP |

By: /s/ W. Gordon Dobie
    W. Gordon Dobie (*pro hac vice*)
    wdobie@winston.com
    WINSTON & STRAWN LLP
    35 West Wacker Drive
    Chicago, IL 60601-9703
    Telephone:   (312) 558-5600
    Facsimile:   (312) 58-5700

    Jeanifer E. Parsigian (SBN: 289001)
    jparsigian@winston.com
    Dana L. Cook-Milligan (SBN: 301340)
    dlcook@winston.com
    WINSTON & STRAWN LLP
    101 California Street, 34th Floor
    San Francisco, CA  94111-5840
    Telephone:   (415) 591-1000
    Facsimile:   (415) 591-1400

*Attorneys for Plaintiff MEGAFON PJSC*

Dated:  December 6, 2019    COVINGTON & BURLING LLP

By: /s/ Clara Shin
    Clara J. Shin (Bar No. 214809)
    COVINGTON & BURLING LLP
    One Front Street, 35th Floor
    San Francisco, CA 94111-5356
    Telephone: (415) 591-6000
    Facsimile: (415) 591-6091
    E-mail: cshin@cov.com

    John E. Hall (Bar No. 118877)
    COVINGTON & BURLING LLP
    One CityCenter
    850 Tenth Street, N.W.
    Washington, DC 20001-4956
    Telephone: (202) 662-6000
    Facsimile: (202) 662-6291
    E-mail: jhall@cov.com

    Kurt G. Calia (Bar No. 214300)
    Kathryn E. Cahoy (Bar No. 298777)
    COVINGTON & BURLING LLP
    3000 El Camino Real
    5 Palo Alto Square, 10th Floor

1
2
3
4
5

Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4717
E-mail: kcalia@cov.com
E-mail: kcahoy@cov.com

*Counsel for Defendant*
*Hewlett Packard Enterprise Co.*

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28